OPINION OF THE COURT
 

 Smith, J.
 

 At the damages trial of this personal injury action, plaintiff’s expert was permitted to testify as to the effect of inflation on any future damages award. The primary issue here is whether CPLR 5041 (e) precludes the plaintiff from presenting evidence of inflation at trial. Defendant also argues that Supreme Court erred in instructing the jury to award plaintiff the value, rather than actual expenditures on past loss of household services and by failing to instruct the jury that only the costs of obtaining future household services necessitated by the injury, which are reasonably certain to occur, may be awarded.
 

 We hold that Supreme Court properly applied the 4% adjustment to structured payments of future damage awards as required by CPLR 5041 (e), in addition to permitting evidence of inflation at trial. However, the jury was erroneously charged with respect to the lost household services component of the damages awarded here. Accordingly, we modify the order of the Appellate Division only in that respect. The Appellate Division had affirmed the judgment in all respects.
 

 On July 6, 1989, plaintiff (who was 47 years old at the time) was seriously injured after he fell from scaffolding on a site owned by the defendant. Supreme Court awarded plaintiff partial summary judgment on the issue of liability and a trial on damages followed. During the trial, plaintiff presented expert testimony on the general effects of inflation on the value of money. Plaintiff’s economist also testified that inflation would cause medical expenses to increase at a rate of 7.75% per year, and that wages and fringe benefits would grow at the rate of 3.37% per year.
 

 Based on these percentages, the expert estimated plaintiff’s loss of future wages and benefits at either $547,466 (if plaintiff worked until age 65) or $713,236 (if measured to work life expectancy). The expert also concluded that future medical expenses, assuming that plaintiff would live an additional 24 years, would total $210,874. The jury awarded plaintiff $646,900 for loss of future earnings and benefits and $240,000 for future medical expenses.
 

 
 *316
 
 Plaintiff also testified that he had lost the ability to perform various household tasks after the accident and that he had been relying on friends and relatives to help him maintain his home. Plaintiff’s expert testified that if plaintiff had hired someone to perform such tasks from the time of the accident until the conclusion of trial, plaintiffs expenses would have totaled $43,096. The expert also concluded that plaintiff would require $431,927 in order to hire someone to provide such household services over his future life expectancy.
 

 At the charge conference, defendant argued that the jury had not received adequate guidance with respect to loss of household services and proposed that the jury be charged,
 

 "As for the claim of plaintiff’s loss of household services, you will award him damages for loss of household services plaintiff has incurred or is reasonably certain to incur in the future .by reason of household services made necessary as a result of his injuries.”
 

 The trial court instructed as follows: "There is also a claim in this case for the loss of household services. It is for you to determine the value of those lost services.” The jury awarded plaintiff $43,096 for loss of household services from the accident to the date of the verdict, and $328,265 for future loss of household services.
 

 Defendant appealed and the Appellate Division affirmed the judgment, without opinion. We granted defendant leave to appeal.
 

 We turn first to defendant’s contention that plaintiff obtained a double recovery for inflation because Supreme Court allowed expert evidence on inflation at trial, thereby permitting the jury to consider inflationary effects in arriving at the damages award, and thereafter added the 4% adjustment to the structured payments portion of the award pursuant to CPLR 5041 (e). Defendant argues that the 4% rate in CPLR 5041 (e) was meant to be the exclusive adjustment for inflation where an award of future damages is subject to the structured payment scheme. Plaintiff contends that expert testimony on inflation was properly admitted because CPLR 4111 (f) requires that a jury award the "full amount of future damages.” Plaintiff also argues that the 4% adjustment in CPLR 5041 (e) was not meant to account for inflation.
 

 We have previously outlined for other purposes and calculations, the statutory scheme of article 50-B of the CPLR, which
 
 *317
 
 provides for periodic payment of damage awards totaling over $250,000 in certain types of cases, including personal injury actions
 
 (see, Rohring v City of Niagara Falls,
 
 84 NY2d 60, 65-66, 67). As relevant here, when the threshold figure of $250,000 has been reached, CPLR 5041 (e) provides that,
 

 "The annual payment for the first year shall be calculated by dividing the remaining amount of future damages by the number of years over which such payments shall be made and the payment due in each succeeding year shall be computed by adding four percent to the previous year’s payment. Where payment of a portion of the future damages terminates in accordance with the provisions of this article, the four percent added payment shall be based only upon that portion of the damages that remains subject to continued payment.”
 

 Prior to the enactment of article 50-B, juries were permitted to consider expert testimony relating to inflation in reaching their verdicts
 
 (cf., Caprara v Chrysler Corp.,
 
 52 NY2d 114, 126;
 
 see also,
 
 52 NY2d, at 137 [dissenting opn]). Nothing in CPLR 5041 explicitly dispenses with this common-law rule. Indeed, CPLR 4111 (f), enacted as part of the same tort reform package that included article 50-B
 
 (see,
 
 L 1986, ch 682), provides that in computing future damages, "the jury shall be instructed to award the full amount of future damages, as calculated, without reduction to present value.” Thus, CPLR 4111 (f) supports plaintiffs contention that all relevant information necessary to award the "full amount” of future damages, including evidence on inflation, should be presented to the jury. Nevertheless, since the purpose behind the 4% adjustment to structured payments provided in article 50-B is not evident from the face of the statute, we turn to the legislative history to try to discern its intent.
 

 Article 50-B of the CPLR was enacted in 1986 as part of a tort reform movement and closely parallels the provisions of article 50-A, enacted a year earlier in 1985
 
 (Rohring, supra,
 
 84 NY2d, at 65). Indeed, the structured award provision of article 50-B was explicitly based on the analogous 50-A provision, CPLR 5031 „(e). Consequently, the legislative history of article 50-A is also relevant here.
 

 An early version of article 50-A proposed periodic payments for damage awards above $100,000 "adjusted by a five (5) percent inflation factor” (Mem of State Executive Department,
 
 *318
 
 1985 McKinney’s Session Laws of NY, at 3020). The Bill Jacket on article 50-A also includes positions and interpretations from groups such as the New York County Lawyers Association and the New York State Bar Association which reflected a professional understanding at the time that the proposed 5% adjustment was meant to account for inflation
 
 (see, e.g.,
 
 Bill Jacket, L 1985, ch 294, Report No. 95 of New York County Lawyers Association [introduced by Assembly Committee on Rules at request of Governor] and position paper from Committee on Tort Reparations of New York State Bar Association).
 

 As with article 50-A, the Bill Jacket on article 50-B contains material reflecting a contemporaneous understanding of the 4% rate as an inflation adjuster
 
 (see,
 
 Mem of Consumer Protection Board in partial support of the bill, Bill Jacket, L 1986, ch 682 [objecting to the bill on the grounds that the 4% annual adjustments would be unable to fully account for the cost of inflation]).
 

 Although these materials arguably favor defendant’s contention that the Legislature intended the 4% rate in CPLR 5041 (e) to account for inflation, nothing in any of the legislative history indicates that the 4% rate was intended to be the
 
 exclusive
 
 measure of inflation or that the fact finder should be prohibited from considering the effects of inflation in reaching a damages award. Indeed, statements made by Melvin Miller (a New York State Assembly member) shortly before a vote occurred on an omnibus bill which included provisions subsequently enacted as article 50-A, suggest the contrary.
 

 In responding to a query by another member of the Assembly about the 4% rate, Mr. Miller stated his belief that any verdict rendered by a jury would reflect inflation since the proposed legislation would shift the task of reducing the jury award to present value from the jury to a court
 
 (see,
 
 Transcript of New York State Assembly Proceedings, June 24, 1985, at 266-267, 272). As stated by Mr. Miller, after a "gross verdict” is rendered, the jury’s award would be reduced to present value by the court, then structured, and the 4% rate added to the periodic payments made from the annuity purchased by the defendant
 
 (id.,
 
 at 272-273). While the statements of legislators made during legislative debates are not dispositive of legislative intent
 
 (see, Matter of Knight-Ridder Broadcasting v Greenberg,
 
 70 NY2d 151, 159), such statements may be accorded some weight in the absence of more definitive manifestations of legislative purpose.
 

 
 *319
 
 Moreover, the Governor’s Approval Memorandum for article 50-B, which refers to the 4% rate as an "interest factor” adds a different perspective for our consideration of the purpose and nature of the statutory adjustment. As the Governor noted in his 1986 Approval Memorandum, article 50-B
 

 "authorizes periodic payments of future damages over $250,000, in equal installments over the period of years determined by the trier [of fact] but not more than 10 years, with a 4% interest factor computed on the prior year’s payment. This structured award provision is based on a similar provision enacted last year for medical malpractice actions” (Governor’s Approval Mem, L 1986, ch 682, 1986 McKinney’s Session Laws of NY, at 3184).
 

 No precise definition of "interest” is provided. Thus, because the "interest factor” does not expressly include "inflation” as one of its components, precluding expert testimony on inflation would erode the compensatory function of damages awards as inflation would be entirely removed from the calculation of future damages. An inflation adjustment, as such, does not provide additional compensation for a plaintiff above and beyond the damages already awarded; rather, it ensures that the passage of time will not devalue the award because of a general rise in prices for goods and services, including such items as medical care. Consequently, some adjustment for inflation, whether made by a jury and incorporated in the verdict, or made by a court after the verdict has been rendered, should occur. Otherwise, plaintiffs might receive less than the full recovery contemplated by CPLR 4111 (f).
 

 Alternatively, if the statutory 4% rate represents "interest” without an inflation component, or something other than an inflationary factor, expert testimony on inflation before a jury would not result in a double recovery as contended by the defendant. Indeed, the 4% may well have been a legislative compromise to the over-all enactment to fulfill a specific purpose— for example, to balance the loss of investment potential for plaintiffs, or to offset other substantial economic advantages afforded to defendants (such as allowing defendants to pay out less money, to be invested over time to create plaintiff’s damage award).
 

 Finally, the amount of any future damages award cannot be determined in advance of a verdict. Thus, precluding expert testimony on inflation would place plaintiffs who receive future
 
 *320
 
 damages awards totaling less than $250,000 at a distinct disadvantage, as compared to those whose awards are governed by articles 50-A and 50-B. Such a rule would require juries to be instructed in a very confusing alternative. Many plaintiffs could end up undercompensated since their qualifying awards would not have been adjusted for inflation. It is improbable that the Legislature intended to produce this inequity and to introduce this confusion.
 

 Since neither the statute nor the legislative history behind the enactment of the 4% adjustment in CPLR 5041 (e) discloses any intent as to whether the Legislature meant the rate to be the exclusive, or a postverdict adjustment for inflation, the purpose of the 4% adjustment remains unclear. Consequently, until the Legislature provides some other definitive indication, we must apply the terms of the statute as written and in a manner that comports with the policy and practical considerations reflected in this opinion.
 

 In sum, the Legislature has not expressed a rule or an intent to change the common-law rule permitting expert testimony on inflation for the consideration of a jury. Thus, we conclude that Supreme Court was not foreclosed from permitting such evidence here. The award of future damages in this case exceeded $250,000; therefore, Supreme Court was also required to follow the mandate of CPLR 5041 (e) to "enter a judgment for the amount of the present value of an annuity contract that will provide for the payment of the remaining amounts of future damages in periodic installments.” Since CPLR 5041 (e) also requires that yearly periodic installment payments under such an annuity, beginning in the second year, be adjusted by adding 4% to the previous year’s payment, Supreme Court properly adjusted the jury verdict in this case.
 

 We now turn to the loss of household services component of the damages awarded to plaintiff. Defendant contends that since plaintiff did not incur any actual expenditures on household services between the accident and the date of verdict, having relied on the gratuitous assistance of relatives and friends, the jury improperly awarded plaintiff $43,096 in that respect. We agree.
 

 A damages award reflecting the value of such services did not serve a compensatory function and was improperly made
 
 (see, Coyne v Campbell,
 
 11 NY2d 372). The jury should also have been instructed that future damages for loss of household services should be awarded only for those services which are
 
 *321
 
 reasonably certain to be incurred and necessitated by plaintiffs injuries. Contrary to plaintiffs contention, such an instruction does not require him to be dependent on the charity of others. Such a charge to the jury merely ensures that any compensatory damages awarded to plaintiff are truly compensatory.
 

 Accordingly, the order of the Appellate Division should be modified, without costs, and the case remitted to Supreme Court for adjustment of damages as indicated and in accordance with the opinion herein and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Ciparick, Murphy
 
 *
 
 and White* concur; Judges Levine and Wesley taking no part.
 

 Order modified, without costs, by remitting to Supreme Court, Erie County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.
 

 *
 

 Designated pursuant to NY Constitution, article VI, § 2.