OPINION OF THE COURT
ClPARICK, J.
In Bryant v New York City Health & Hosps. Corp. (93 NY2d 592 [1999]) and earlier cases, we interpreted some of the “nuts- *165 and-bolts” calculations required by the structured judgment provisions of CPLR articles 50-A and 50-B. In this medical malpractice action, defendant hospital, by its insurance carrier, claims that the legislative intent that prompted enactment of article 50-A prohibits literal application of the statute when the resulting structured judgment might exceed the jury’s future damages award. We disagree and affirm the Appellate Division order upholding Supreme Court’s judgment.
I
Through his mother, plaintiff Samuel Desiderio sued the defendants, New York Hospital and several of its doctors, for malpractice that resulted in severe brain damage. Samuel was born with hydrocephalus and, in October 1990, underwent surgery to revise a shunt used to treat the condition. The shunt failed, putting pressure on Samuel’s brain. After nearly three years of in-patient care, Samuel now breathes at home through a permanent tracheostomy and must be fed through a gastrostomy tube. His injury also reactivated and exacerbated a seizure disorder resulting in frequent episodes — sometimes several per day — in which Samuel stops breathing and must be resuscitated.
The hospital’s liability was not an issue at trial. The jury verdict, as reduced by Supreme Court, awarded plaintiff $1,500,000 in past pain and suffering with future damages as follows: $3,000,000 for pain and suffering, $824,900 for equipment, $1,436,590 for medication, $1,619,787 for supplies, $917,016 for medical care, $40,000,000 for nursing care, and $500,000 for therapy after the age of 21.
Supreme Court then structured a future damages judgment as required by CPLR article 50-A. Defendant proposed a structure based on plaintiff's “actual” losses, which would limit plaintiffs total potential recovery to the amounts set out by the jury in its future damages award. Thus, using the award for future nursing care (by far the largest component of future damages) as an example, defendant proposed a structure that would pay $262,800 in the first year, compounding at a rate of 3.335% for 55 years — the compensation period fixed by the jury — for a total of $40 million. By contrast, plaintiff proposed a judgment that first made adjustments for litigation expenses and other items pursuant to CPLR 5031 (b) and (c) and then divided the remaining undiscounted award for future nursing *166 care by 55. That quotient, $635,594, would then be used as the first year’s award and compounded at a rate of four percent per year for 55 years (see CPLR 5031 [e]).
Supreme Court adopted plaintiffs methodology finding it consistent with our holding in Bryant. The court rejected defendant’s proposal, stating it would require rewriting CPLR 5031 (e) and ignoring the decisions of this Court interpreting the statute. The Appellate Division affirmed (294 AD2d 241 [2002]) and certified the following question to this Court: “Was the order of the Supreme Court, as affirmed by this Court, properly made?” We now affirm.
II
This Court has repeatedly and extensively examined the structured judgment provisions of CPLR articles 50-A and 50-B (see Bryant, 93 NY2d 592; Schultz v Harrison Radiator Div. Gen. Motors Corp., 90 NY2d 311 [1997]; Rohring v City of Niagara Falls, 84 NY2d 60 [1994]).[1] Before 1985, future damages were awarded in a lump sum representing the present value of the future damages, payable immediately. With structured *167 judgments, past damages are paid in a lump sum as are the first $250,000 in future damages. Additional future damages after attorneys’ fees are paid in monthly installments. The jury is instructed to award the full amount of future damages without reduction to present value (see CPLR 4111 [d]).[2] The term of payment is also dictated by the jury in its itemized verdict; however, payment on awards for future pain and suffering may not exceed 10 years. In order to ensure the availability of funds for these future payments, CPLR 5031 (e) requires purchase of an annuity contract that will make payments in predetermined amounts.
Section 5031 (e) is very specific regarding the procedure for structuring the annuity for future damages in excess of $250,000. After certain adjustments are made to the award, the statute directs that the first annual payment from the annuity is to be calculated “by dividing the remaining amount of future damages by the number of years over which such payments shall be made and the payment due in each succeeding year shall be computed by adding four percent to the previous year’s payment” (CPLR 5031 [e] [emphasis added]). Once the court has computed this stream of payments, it determines the present value of the annuity contract “in accordance with generally accepted actuarial practices” (CPLR 5031 [e]).
The widely recognized benefit of structuring is that it allows a defendant’s insurer “to retain and invest the balance of the award before the installments come due,” thereby reducing overall costs (see Governor’s Program Mem, 1985 NY Legis Ann, at 132). Additionally, most of the payments from a structured judgment cease upon an injured plaintiffs death, unlike lump-sum payments which are immediately available and can be invested or spent at the plaintiffs discretion. Thus, from a carrier’s economic perspective, the cost of the annuity represents an upper limit of expense, with a significant potential for savings in the event of a plaintiffs early demise.
Ill
At the outset of our analysis, we note that in the present case — because of the catastrophic nature of plaintiffs injuries, *168 coupled, with a projected life expectancy of 55 years — there is a potential dramatic discrepancy between the jury award and an ultimate recovery, assuming plaintiffs survival for more than half a century. With lower awards and shorter durations, the application of article 50-A does not produce such a disparity.
The payout structure defendant proposes makes the jury’s award in each category of damages a maximum payment. Working backwards from the jury’s award, the first year’s payment for each category of loss — which is pivotal here, as all future payments are based on it — is determined by reference to the trial evidence. Similarly, the growth rate applied to each successive year’s payment is determined by reference to the evidence, selecting a rate that will yield the total amount awarded by the jury at the end of the payment period. The court then calculates a schedule of annual payments that corresponds to the jury’s total award, and each year’s payment is reduced to present value for purposes of purchasing an annuity.
Defendant illustrates this method with respect to the award for future nursing care. The expert evidence at trial was that plaintiffs nursing care could cost as much as $262,800 in the first year, with an annual “growth rate” — the rate at which the cost of care increases — of anywhere from 2.5% to 3.93% with 3.3% being the national average. Since the jury awarded $40 million over a life expectancy of 55 years, defendant assumes that the jury credited plaintiffs evidence that nursing would cost $262,800 in the first year and reconciled conflicting testimony regarding the growth rate by applying a 3.335% rate, closer to the average 3.3%. Thus, $262,800 compounding at a rate of 3.335% for 55 years equals the jury’s figure of $40 million. By contrast, the calculation urged by the plaintiff and applied by the courts below yields a first year payment of $635,594 and compounds that payment by four percent per year, far in excess of the amount required by the evidence, but in compliance with the statutory formula and our precedents.
Defendant admits that its proposed method does not comport with the structuring formula we determined was statutorily required in Bryant.[3] It also ignores the statutory direction to increase annuity payments by four percent annually notwithstanding our ruling that the four percent factor and the jury’s *169 consideration of inflation are not mutually exclusive (see Schultz v Harrison Radiator Div. Gen. Motors Corp., 90 NY2d 311). Instead, defendant submits that when a structure calculated with “mechanical” adherence to the requirements of CPLR 5031 (e) results in a judgment that drastically departs from the amount awarded by a jury, a more elastic approach is required. Defendant contends the structured judgment provisions are “administrative schemes intended to regulate and structure payment, and they should not be construed in such a way as to increase the underlying liability owed by defendants” (Rohring v City of Niagara Falls, 84 NY2d 60, 67).[4] Defendant’s proposed limits on this departure from the statute are the court’s inherent power to do justice, and certain pronouncements of legislative intent derived from statutory history. This argument is unconvincing.
As a general rule of statutory interpretation, application of a statute’s clear language should not be ignored in favor of more equivocal evidence of legislative intent. Here the statute is clear that the first year payout under the annuity is to be determined “by dividing the remaining amount of future damages by the number of years over which such payments shall be made,” and that the payment for each successive year is to be computed by “adding four percent to the previous year’s payment” (CPLR 5031 [e]).
The issues defendant raises on this appeal have, for the most part, already been settled by Bryant and Schultz. As we indicated in Bryant, the most direct way to effectuate the will of the Legislature is to give meaning and force to the words of its statutes (93 NY2d at 602). The first issue addressed in Bryant, the correct method for calculating the first year’s payment in a structured judgment, dispositively settles that question here: In order to arrive at the first year’s payment, CPLR 5031 *170 (e) mandates that the jury’s full undiscounted future damages award for economic losses be divided by the number of years the jury has determined that award to cover. The statute does not require a “per year” breakdown of the jury’s verdict or call for assumptions about how the jury arrived at its verdict. Obviously, had the Legislature intended that structured judgments bear such a direct relationship to the jury’s verdict, it could have required itemization on a per-year basis or itemization of a specific inflation rate. However, the Legislature amended CPLR 4111 (d), requiring only that juries itemize their verdicts with a category of damages, a total dollar amount and a term of years (L 1985, ch 294, § 6). There is no indication in the history that the Legislature sought to require that the structure exactly match the manner in which the costs accrue. To the contrary, the annuity is meant to make the payments periodic. In the absence of such legislative intent, we decline to ask juries as a matter of course to itemize the basis for their verdict in terms of inflation rates, productivity rates and other factors assumed in reaching a total amount of damages, and to thereby render superfluous the information specifically required under CPLR 4111 (d).
In her concurrence, Judge Read would hold that it was error for the trial court not to grant defendant’s request that the jury be instructed to itemize its verdict to include a first year payment figure and a growth rate.[5] She would so hold in order to preserve the possibility that other defendants in future cases *171 might present arguments for alternative structuring methodologies which, unlike that of defendant here, may comport with the language of the statute and legislative intent. Assuming the unlikely premise that a judge could predict in advance of the jury’s verdict which judgments will actually require structuring, we note that CPLR 4111 (d) and (f) are specific and comprehensive in defining the information a jury is required to itemize in its special verdict. The statute does not authorize additional itemizations, including calculations used in reaching its future damages award.
The same reasoning applies to the annual increases factored into the annuity structure. Defendant’s method for determining a growth rate for the structured judgment amounts to nothing more than applying a rate that will increase payments in such a way as to equal the jury’s future damages award in the specified number of years. CPLR 5031 (e) does not authorize this result-oriented process. Moreover, defendant’s methodology completely disregards the additional four percent adjustment on structured judgments specifically delineated in the statute. We have already held that the tort reforms of 1985 did not do away with a jury’s ability to hear testimony on inflation or apply an interest rate on its future damages awards (see Schultz, 90 NY2d at 317). Thus, in Schultz, we held that a jury may factor an inflationary rate in its future damages verdict, even though the trial court must apply the four percent required in CPLR 5031 (e).* ****[6] Again, the close linkage between the jury’s reasoning and the eventual structured judgment advocated by defendant is not required by the language of the statute or supported by the legislative history.
At this point in our experience with the CPLR structuring provisions, we cannot perceive any proposed methodology that *172 excludes either the jury’s calculation of a growth factor or the statutes’ requirement of an annual four percent additur that would not run afoul of the clear statutory language or our holding in Schultz. Our well-established rules of statutory construction prevent us from looking behind the unambiguous language of a statute unless an absurd result would obtain from its application (see Doctors Council v New York City Employees’ Retirement Sys., 71 NY2d 669, 674-675 [1988]). Literal application of these statutes does not produce an absurd result. The absurdity that Judge Read perceives stems from her conviction that the current structuring methodology double counts for inflation — a conclusion based wholly on her disagreement with Schultz. Moreover, even assuming some ambiguity in the statutory language, it simply cannot be said with any degree of certainty that this is not the structuring methodology the Legislature intended.
The Attorney General, as intervenor and amicus, contends that the phrase “determined in accordance with generally accepted actuarial practices” in CPLR 5031 (e) creates an ambiguity in that the structured judgment arrived at under this section does not appear to comport with settled economic rules concerning the time value of money. However, it is clear from a reading of the statute that the phrase “generally accepted actuarial practices” refers to selection of the discount rate used to reduce the structured judgment to present value. A fair reading of that phrase in its context does not give the court the power to review and rewrite the entirety of a structured judgment to conform to economic doctrines.
IV
Defendant would have us view the multifaceted features of the 1985 act as intended for a single purpose: the reduction of costs for medical malpractice carriers. However, the structured judgment provisions, along with the other reforms passed in 1985, represent a weighing and balancing of many interests— including those of doctors, patients, malpractice victims, consumers, liability carriers and taxpayers.
Bryant recognized that the structured judgment statutes were intended to serve the dual purpose of “[moderating] the cost of medical malpractice premiums, while assuring adequate and fair compensation for injured persons” (Governor’s Program Mem, 1985 NY Legis Ann, at 132; see also Bryant, 93 NY2d at 600). Indeed, the entirety of the numerous provisions in chapter 294 of the Laws of 1985 represents concessions from *173 all sides for the purpose of maintaining the availability of medical liability insurance.[7] By spreading payments over time and structuring benefits, plaintiffs have greater assurance that funds will be available for future needs as they arise. Counterbalancing that benefit, however, plaintiffs lost the opportunity to receive a lump-sum payment and seek their own rate of return — one possible justification for the four percent additur in CPLR 5031 (e) (see Schultz, 90 NY2d at 319). Likewise, while interest on earnings from a lump-sum payment are taxable, annual payments from a structured judgment are not— another benefit to plaintiffs. However, defendants are relieved of the obligation to pay most future damages from structured judgments upon the injured plaintiff’s death, a source of savings to carriers who purchase annuities at substandard underwriting rates based on actuarial life expectancies (see CPLR 5035). The extensive debates in the State Assembly and Senate reflect the myriad interests and concerns that went into creating a legislative package that weighed interests on all sides, as opposed to conferring a unilateral benefit on the liability insurance industry.
Although it appears that, should he survive for 55 years, plaintiff would ultimately be paid more than the jury award, that alone is not enough to disregard the specified statutory procedure. The Legislature weighed competing interests and arrived at a methodology, an unequivocal directive we will not ignore or rewrite.
V
Finally, it is noteworthy that this Court unanimously affirms the order of the Appellate Division upholding the judgment, and does so convinced that we are inescapably led to that conclusion by the clear direction of article 50-A in this case. We are, moreover, unanimous in urging the Legislature — as we have done before — to revisit the statute to determine whether, in actual operation, it is achieving its intended purposes, or indeed overcompensating plaintiffs.
It is more than 18 years since enactment of article 50-A, and there have by now likely been hundreds of awards structured pursuant to the statute. While this Court is bound by the record and the responsibility to implement clear statutory direc *174 tives, the Legislature can take a broader view, examining the range of other cases, eliciting the views of the various segments of affected, critically interested communities, and investigating and anticipating the full impact of any necessary amendments, whether to article 50-A, to CPLR 4111 or to other statutory sections.
We have examined defendant’s remaining arguments that the structuring statute violates due process and, as applied, creates an unconstitutional taking, and conclude they are without merit.
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question not answered upon the ground that the Appellate Division order is final and thus the certified question is unnecessary.

. CPLR 5031 (e) provides: “(e) With respect to awards of future damages in excess of two hundred fifty thousand dollars in an action to recover damages for dental, medical or podiatric malpractice, the court shall enter judgment as follows:
“After making any adjustments prescribed by subdivisions (b), (c) and (d) of this section, the court shall enter a judgment for the amount of the present value of an annuity contract that will provide for the payment of the remaining amounts of fiiture damages in periodic installments. The present value of such contract shall be determined in accordance with generally accepted actuarial practices by applying the discount rate in effect at the time of the award to the full amount of the remaining future damages, as calculated pursuant to this subdivision. The period of time over which such periodic payments shall be made and the period of time used to calculate the present value of the annuity contract shall be the period of years determined by the trier of fact in arriving at the itemized verdict; provided, however, that the period of time over which such periodic payments shall be made and the period of time used to calculate the present value for damages attributable to pain and suffering shall be ten years or the period of time determined by the trier of fact, whichever is less. The court, as part of its judgment, shall direct that the defendants and their insurance carriers shall be required to offer and to guarantee the purchase and payment of such an annuity contract. Such annuity contract shall provide for the payment of the annual payments of such remaining future damages over the period of time determined pursuant to this subdivision. The annual payment for the first year shall be calculated by dividing the remaining amount of future damages by the number of years over which such payments shall be made and the payment due in each succeeding year shall be computed by adding four percent to the previous year’s payment.”

. CPLR 4111 (d) provides: “In itemizing amounts intended to compensate for future damages, the jury shall set forth the period of years over which such amounts are intended to provide compensation. In actions in which article fifty-A or fifty-B of this chapter applies, in computing said damages, the jury shall be instructed to award the full amount of future damages, as calculated, without reduction to present value.”

. Under defendant’s methodology, the total amount of future payments can never be greater than the jury’s award. As a result, the value of the annuity to be purchased will always be equal to the present value of the jury’s future damages award, although the cost might be less. In essence, this methodology, which simply requires reducing the jury’s future damages *169 award to present value for purposes of purchasing an annuity, is actually a variant of the proposed methodology we rejected in Bryant.

. From a mathematical standpoint, defendant’s reasoning could mean that any structured judgment paid in its entirety will run afoul of legislative intent because the same calculations that cause the full-term judgment payout to exceed the jury verdict in this case are performed in every structuring situation, albeit often with less dramatic results. The pronounced discrepancy between the jury award and judgment amount here is the result of the catastrophic nature of plaintiffs injuries coupled with a relatively long life expectancy. However, the phenomenon defendant complains of is not unique to this case (see Lambrinos and Harmon, 1995 Legal Development, Plaintiff Bias in the CPLR 50-A/50-B Statutes, 59 Alb L Rev 693 [1995]).

. Without identifying an ambiguity in “clear statutory directions” (Read, J., concurring op at 177), Judge Read would impose additional conditions on the statutory scheme. She does so in the belief that despite the statute’s clarity in this respect, its execution is “fundamentally at odds with [its] purpose” (Read, J., concurring op at 183) even though she concludes, as we all do, that the statute is only one “part of a complex tort reform package, a legislative compromise the full contours of which are unknowable” (Read, J., concurring op at 181).
The statute directs that the first annuity payment of the judgment is “calculated by dividing the remaining amount of future damages by the number of years over which such payments shall be made and the payment due in each succeeding year shall be computed by adding four percent to the previous year’s payment” (CPLR 5031 [e]). The jury’s verdict pursuant to CPLR 4111 is the total amount of future damages in accordance with the plaintiff’s life expectancy. Judge Read’s view is that CPLR 4111 should be read (or perhaps amended) to require each future damages calculation be specifically itemized with a rate of inflation, productivity rate or other growth factor. Then she would require that the court recalculate the damages award with the four percent as a guaranteed rate of inflation. This might make sense if the four percent could only be understood as a default inflation figure. However, we rejected that proposition in Schultz. Judge Read’s new *171 statutory directive would require the remaining amount of future damages to be reduced to present value by recalculating the jury’s award using its rate of inflation (and any other growth factors found by the court or the jury). That amount would be multiplied by a plaintiff’s life expectancy, then divided by that figure and compounded annually by at least four percent for a period equal to a plaintiff’s life expectancy (see Read, J., concurring op at 183). Such rewriting of the statute — if required, and desired — can only be accomplished by the Legislature, not the Court.

. Contrary to Judge Read’s suggestion, the rule in Schultz did not emerge from statutory silence (see Read, J., concurring op at 184). It was formed, in part, from our view that CPLR 4111 and the structured judgment statutes did not abrogate the longstanding common-law rule that juries could consider inflation in calculating future damages. Judge Read’s proposed rule, however, requiring juries to provide additional itemization, has neither a history rooted in the common law nor legislative authorization.

. Judge Read is in error in stating that the basis for this conclusion is simply the Governor’s Approval Memorandum (see Read, J., concurring op at 182).