Read, J.
(concurring). I agree with defendant New York Hospital that the trial court erred in denying a request to instruct the jury to set forth its factual determinations as to the starting figure and growth rate for each category of future damages. The denial was not reversible error in this case, however, because the only purpose for which defendant requested these factual determinations was to allow the trial court to apply a proposed structuring methodology that sidesteps two clear statutory directions in the structured judgment statutes (CPLR article 50-A and its cognate, article 50-B) applicable to calculation of the annuity for future damages— i.e., to divide by the number of years for which the factfinder awarded payment of these future damages (but no more than 10 years in the case of damages for future pain and suffering) and to compound by 4% for the same number of years. While I thus agree with the majority on the impermissibility of the structuring methodology proposed by defendant here, I am unable to subscribe to its broader analysis.
I.
By turns opaque and prescriptive, CPLR 5031 and 5041 test the limits of the techniques for statutory interpretation. In three principal cases, we have deployed the familiar tools of the trade (language, context, intent or purpose, legislative history, bearing of related provisions) to fill in statutory gaps as necessary to decide discrete issues related to the structuring methodology.
In Rohring v City, of Niagara Falls (84 NY2d 60 [1994]), we addressed the payment of attorneys’ fees attributable to the future damages award. The specific question posed was whether the present value of these attorneys’ fees should be subtracted from the present or the gross (i.e., undiscounted) value of the future damages subject to structuring. Finding inadequate interpretive guidance in the statutory language— which we labelled “circular,” “patently ambiguous” and “impos *178 sible to apply as written” (id. at 67) — we turned to legislative intent or purpose.
We characterized articles 50-A and 50-B as intended by the Legislature to be “technical administrative schemes * * * to regulate and structure payment [which] should not be construed in such a way as to increase the underlying liability owed by defendants,” so that “[p]laintiffs are entitled to be made whole, as determined by the trier of fact, but have no right to overcompensation” (id.). With this legislative intent as our polestar, we concluded that the proper structuring methodology was to determine the present value of future damages before attorneys’ fees and then to reduce this amount by the present value of attorneys’ fees. We noted that use of the alternative methodology proposed would result in a combined payment to plaintiff and plaintiff’s counsel exceeding the amount awarded by the jury, a “result * * * inconsistent with the purposes of articles 50-A and 50-B” (id. at 68).
In Schultz v Harrison Radiator Div. Gen. Motors Corp. (90 NY2d 311 [1997]), defendant argued that the factfinder could not consider any evidence of inflation because the 4% annual, compounded increase in future payments called for by CPLR 5041 (e) was the exclusive proxy for inflation in a future damages award subject to the statute. Thus, we framed the issue as “whether CPLR 5041 (e) precludes the plaintiff from presenting evidence of inflation at trial” (id. at 315), and decided that it did not.
In reaching this conclusion, we noted that prior to article 50-B’s enactment, juries were permitted to consider expert testimony relating to inflation in reaching verdicts, and that nothing in CPLR 5041 explicitly abrogated this common-law rule. We also observed that CPLR 4111 (f), enacted along with article 50-B to facilitate its implementation, called for the jury in a personal injury case to “be instructed to award the full amount of future damages, as calculated, without reduction to present value” (id. at 317 [emphasis added]). We interpreted the modifier “full” to denote an amount reflecting inflation. Moreover, we were concerned that the exclusion of evidence of inflation might disadvantage plaintiffs who ultimately recover less than $250,000 in future damages, the threshold for structuring, or at least complicate the jury charge.
Because the purpose of the 4% increase was “not evident from the face of the statute” (id.) — indeed, the structured judgment statutes and CPLR 4111 (d) and (f) are both silent on the *179 issue — we also searched legislative history for the underlying intent or purpose. There we found that the Governor, in an early version of article 50-A, had identified the statutory percentage increase in CPLR 5031 (e) (initially 5%) as an “inflation factor” (id.). Moreover, items in the Bill Jackets for both articles 50-A and 50-B reflected a consistent contemporaneous understanding that these increases were meant to account for inflation. We noted, however, that “nothing in any of the legislative history indicates that the 4% rate was intended to be the exclusive measure of inflation or that the fact finder should be prohibited from considering the effects of inflation in reaching a damages award” (id. at 318 [emphasis in original]).
While recognizing that “statements of legislators made during legislative debates are not dispositive of legislative intent” (id.), we also considered comments made by Assembly Member Melvin Miller during debate on the bill containing provisions subsequently enacted as article 50-A. He expressed his belief that any verdict rendered by a jury would reflect inflation prior to the trial court’s reduction of it to present value and the addition of the 4% increase compounded annually (id.).[1]
The only evidence that we marshalled to substantiate that the 4% increase was meant to compensate for something other than inflation was an excerpt from the Governor’s Approval Memorandum for article 50-B. This passage described article 50-B as “authorizing] periodic payments of future damages over $250,000, in equal installments over the period of years determined by the trier effect [sz'c] but not more than 10 years, with a 4% interest factor computed on the prior year’s payment” (Governor’s Mem approving L 1986, ch 682, 1986 McKinney’s Session Laws of NY, at 3184 [emphasis added]). Of course, the only future damages limited to a 10-year payout under the structured judgment statutes are those for pain and suffering. Under New York common law, future damages for pain and suffering — like other future damages — were paid in a lump sum, but — unlike other future damages — were neither augmented for inflation nor discounted (see e.g. Matter of McKenna v State of New York, 112 AD2d 996, 998 [2d Dept 1985]; Jacobs v Peress, 24 AD2d 746 [1st Dept 1965]). Hence, the de *180 scription of the 4% increase in relation to future damages for pain and suffering as an “interest factor” rather than as an “inflation factor” makes sense in context and does not suggest that the 4% was intended or understood to compensate for something other than inflation for other categories of future damages, such as future medical costs or future lost earnings.
Finally, Bryant v New York City Health & Hosps. Corp. (93 NY2d 592 [1999]) called on us to answer two more methodological questions: whether future damages awards made by annual payments are properly calculated according to future value or present value; and whether the 4% should be included in the award prior to determining attorneys’ fees (id. at 598). We concluded that the trial court should include the 4% increase, compounded annually, before reducing the future damages award to present value and calculating the attorneys’ fees (id. at 604).
Looking first to the language of the structured judgment statutes and CPLR 4111 (f), we pointed out that these provisions consistently refer to “future damages” and the “full amount” of such damages (id. at 602-603 [emphasis omitted]). We reiterated the observation in Schultz that an “inflation adjustment” in an award simply protects against erosion of its value over time (id. at 603). We cautioned that “use of the present value of future damages as the basis for the annual payments would be at odds with Schultz, as it would for all intents and purposes extract the jury’s inflation adjustment from the plaintiff’s award” and that “[n]othing in the statutes’ language supports this unintended result,” which would undermine the statutes’ compensatory goal (id.). Finally, we found support for our position in the language of related statutory provisions (id. at 604, citing CPLR 4111 [f] [the jury shall “be instructed to award the full amount of future damages, as calculated, without reduction to present value”]; CPLR 5034, 5044 [directing that upon granting a judgment creditor’s petition for a lump-sum payment after default, the remaining annuity contract payments shall not be converted to present value]; and CPLR 5035 [b]; 5045 [b] [authorizing conversion of periodic installments allocable to loss of future earnings to present value and payment of them as a lump sum upon the judgment creditor’s death]).
To answer the methodological question about the calculation of attorneys’ fees, we relied principally on the statutory language (i.e., CPLR 5031 [e]; 5041 [e] [requiring the annuity contract to provide for “payment of the annual payments,” *181 which include the 4%]). We also reasoned that attorneys’ fees are generally based on a plaintiffs overall recovery (Bryant, 93 NY2d at 604-605).
II.
As the foregoing Cook’s tour of our previous encounters with CPLR articles 50-A and 50-B illustrates, we have applied legitimate techniques and tools to deal with the maddening ambiguities and silences in these statutes. But in doing so we have inevitably made choices and those choices have added our interpretive gloss to the Legislature’s handiwork.
Like Judge Rosenblatt, I find it “difficult to imagine that the Legislature could have easily predicted that article 50-A (as later interpreted) would lead to this extraordinary level of compensation” (concurring op at 174-175) in a case such as this, or that this consequence — awards greatly exceeding the future damages found by the factfinder — was ever intended. Articles 50-A and 50-B were, as the majority points out, part of a complex tort reform package, a legislative compromise the full contours of which are unknowable. Nonetheless, as we acknowledged in Rohring, the structuring methodology is supposed to regulate and structure payment, not to increase the underlying liability.
Commentators who have parsed (and criticized) the mathematics of the structured judgment statutes[2] have suggested that much of this disparity between the future damages as determined by the factfinder and as calculated for the annuity results from taking a jury verdict reflecting inflation and then increasing it by 4% compounded annually. This particular approach was introduced into the interpretive mix relatively early on by the Fourth Department in Brown v State of New York *182 (184 AD2d 126 [1992]), a case in which we denied leave to appeal (81 NY2d 711 [1993]).[3] When we finally considered the issue in Schultz, we decided that CPLR 5041 (e) does not preclude the plaintiff from presenting evidence of inflation at trial because the 4% increase is not the sole or exclusive measure of it.
In my view, it does not ineluctably follow that the inflation and/or productivity growth rates determined by the factfinder for future medical costs or earnings and the 4% increase are additive. To the extent that Schultz holds otherwise (my colleagues’ view), that conclusion must rest on the proposition that the 4% increase represents something other than inflation. This proposition finds no support in statutory language (CPLR 5031 and 5041 are silent as to the purpose of the 4% increase) and is contrary to both the Governor’s characterization of the statutory increase in his program bill on which article 50-A was based and the consistent contemporaneous understanding that the 4% increase was designed to account for inflation.
The evidence that we cited in Schultz to support this proposition was the previously quoted statement made in the Governor’s Approval Memorandum for article 50-B, which was limited in scope to future damages paid out over 10 years; i.e., future damages for pain and suffering. We also suggested in Schultz (and plaintiff argues here) that the 4% increase might have been intended to compensate plaintiffs for “the loss of investment potential * * * or to offset other substantial economic advantages afforded to defendants (such as allowing defendants to pay out less money, to be invested over time to create plaintiffs damage award)” (90 NY2d at 319). Structuring of judgments was expressly designed, however, to allocate to the defendant, not the plaintiff, the potential for money when invested over time to yield returns over and above inflation. Any such cost savings accruing to the defendant as a result would obviously be lost if, at the same time, the defendant was required to compensate the plaintiff for the loss of this investment potential. This is especially the case because *183 the structured judgment statutes require the defendant, not the plaintiff, to assume the investment risk; i.e., the plaintiff is guaranteed payment of the annuity regardless of how the defendant’s investments fare.
Viewing our decisions construing CPLR 5031 and 5041 with the gift of hindsight, I conclude that Schultz, read in conjunction with Bryant, created a double-counting for inflation in the annuity not called for by the structured judgment statutes’ language. This double-counting is fundamentally at odds with the statutory purpose and predictably produces absurd results in cases (such as this one) where substantial nonearnings or earnings losses are payable by an annuity over many years or decades. We have in the past adjusted methodologies that double-counted in the computation of future damages awards (see Love v State of New York, 78 NY2d 540 [1991]; Milbrandt v Green Refractories Co., 79 NY2d 26 [1992]). Accordingly, I would revisit Schultz to eliminate the double-counting notwithstanding my recognition of the important (and, in my view, usually overriding) principle of stare decisis.
For example, defendant in this case has inferred that the jury applied an inflation rate of 3.335% for future nursing care by taking the maximum possible annual cost supported by the evidence ($262,800) and determining what percentage increases this amount to $40 million over 55 years as awarded by the jury. Assuming the same figures in a future case where the jury has been instructed to make the requisite findings, the trial court might simply back out the 3.335% from the jury’s full (i.e., undiscounted) future damages award to avoid double-counting when the 4% increase is applied to calculate the annuity. This would result in a future value for the annuity of $50 million rather than $120 million ($262,800 X 55 = $14,454,000 divided by 55 = $262,800 compounded by 4% for 55 years = $50 million). In a case in which the jury found an inflation rate exceeding 4%, the approach employed in Pay (see n 3, supra at 182) would protect the plaintiffs award from erosion by these higher rates of inflation. In essence, 4% is the statutory floor for inflation.
I find nothing in the language of CPLR 5031 and 5041 to preclude a trial court from carrying out such an adjustment, which would, in fact, always compensate the plaintiff for more than the full amount of the future damages as determined by the factfinder without producing an absurdly disproportionate future damages award. Of course, the trial court must know the starting figure and/or the inflation rate for each category of *184 future damages in order to eliminate double-counting in this way.
These factual determinations are a prerequisite for any future damages award reflecting inflation; therefore, the fact-finder must always determine these components of a future damages award and a trial judge sitting without a jury must also always express and explain them. A jury, however, need not state these factual components without an instruction, which the majority argues that CPLR 4111 (d) and (f) prohibit.
As an initial matter, these provisions direct the jury to fix the “full amount of future damages, as calculated, without reduction to present value.” This is a broad statement and, as previously noted, in order to determine the “full amount”— which we read in Schultz to mean damages adjusted to reflect inflation — the jury must necessarily settle on a starting figure and an inflation rate. In addition, the specific direction for the jury to set forth the “full amount” and the period of years “over which such amounts are intended to provide compensation” does not forbid a more detailed instruction.
In short, I would read CPLR 4111 (d) and (f) to permit the jury to be asked to set forth any factual determination necessarily underlying the future damages award and not expressly prohibited by the statute (as reduction to present value is). Having allowed the jury to consider inflation notwithstanding statutory silence I find it inconsistent to preclude the defendant from discovering what the jury decided in this regard because of statutory silence.
III.
This case poses two discrete questions: whether the defendant was entitled to the requested jury instruction and whether the defendant’s proposed structuring methodology passes muster under CPLR article 50-A. I would answer the first question ‘Yes” and the second “No.” Thus, because the failure to permit the jury instruction was not reversible error in this instance, I would affirm the Appellate Division’s order. Finally, I join with my colleagues in urging the Legislature to reexamine the structured judgment statutes to consider whether these important provisions serve their intended purpose in a coherent and equitable way.
Chief Judge Kaye and Judges Smith, Wesley and Graffeo concur with Judge Ciparick; Judges Rosenblatt and Read concur in result in separate concurring opinions.
*185 Order affirmed, with costs. Certified question not answered upon the ground that the Appellate Division order is final and thus the certified question is unnecessary.

. Thus, Assembly Member Miller seemed to assume that the trial court would employ the “double discounting” methodology that we later rejected in Bryant v New York City Health & Hosps. Corp. (93 NY2d 592 [1999]). As we noted in that case, discussed later in the text, this methodology “would for all intents and purposes extract the jury’s inflation adjustment from the plaintiffs award” (id. at 603).

. S. Argentine, From Verdict to Judgment: The Evolution, Confusion and Reformation of CPLR Articles 50-A and 50-B, 40 Buff L Rev 917 (1992); J. Lambrinos and O. Harmon, 1995 Legal Development, Plaintiff Bias in the CPLR 50-A!50-B Statutes, 59 Alb L Rev 693 (1995); M. Wolkoff and E. Hanushek, The Economics of Structured Judgments Under CPLR Article 50-B, 43 Buff L Rev 563 (1995); P. McKenna, A Four Percent Solution to the “Judge’s Nightmare,” 67 NY St B J 44 (Jan. 1995); A. Riccardi, A Reply to Professors Wolkoff & Hanushek on the Economics of Structured Judgments Under CPLR Article 50-B, 44 Buff L Rev 991 (1996); L. Spizman and E. Schmitt, Unintended Consequences of Tort Reform: Rent Seeking in New York State’s Structured Settlements Statutes, 13 J Forensic Econ [No. 1] 29-48 [2000]; A. Riccardi and T. Ireland, Structured Judgments and Periodic Payments in New York: A Unique and Complex System for Tort Awards, 10 J Legal Econ 55 (2000).

. In Rohring and Pay v State of New York (87 NY2d 1011 [1996]), both of which also originated in the Fourth Department, we did not reach any question related to treatment of the 4% increase because the issue had not been preserved. Interestingly, Pay was tried to a judge, not a jury and so the trial court was obligated to set forth the starting figure and inflationary growth rate for future medical costs. The trial court in Pay found that the average rate of future medical inflation was 7.12% and therefore initially increased the award for medical damages by 3% a year, having subtracted the 4% to be added later under CPLR 5041 (e) to determine the annuity.