[842 NYS2d 477]

JOYCE STINTON, as Executrix of ETHEL FLANZRAICH, Deceased, Respondent, v ROBIN's WOOD, INC., Appellant.

Second Department, September 18, 2007

**APPEARANCES OF COUNSEL**

*Mauro Goldberg & Lilling, LLP*, Great Neck (*Caryn L. Lilling, Katherine Herr Solomon*, and *Anthony F. DeStefano* of counsel), for appellant.

*Stephen David Fink*, Forest Hills, for respondent.

**OPINION OF THE COURT**

McCarthy, J.

These appeals present the primary issue whether the $150,000 damages award for future pain and suffering should have been set aside pursuant to policy considerations underlying CPLR article 50-B since the plaintiff's decedent, Ethel Flanzraich,

died one day after the Supreme Court directed the award of such damages at the conclusion of an inquest.

At approximately 4:00 P.M. on August 9, 2001, the then 78-year-old Ethel Flanzraich (hereinafter the decedent), slipped and fell on steps in front of 52 Greentree Road in Monticello (hereinafter the subject property). The defendant, Robin's Wood, Inc., owned the subject property where the decedent fell.

On or about January 21, 2003, the decedent commenced this action against the defendant to recover damages for the injuries she allegedly sustained in the fall, including fractures of her left leg and arm. In her bill of particulars, the decedent alleged that her fall was caused by the negligent application of paint to the steps. The defendant identified Anthony Monforte as its employee who painted the steps.

Pursuant to a preliminary conference order dated August 4, 2003, party depositions were to be held on October 8, 2003. After the defendant failed to produce either Monforte or another representative for the deposition, the Supreme Court ordered the defendant's deposition to be held on April 2, 2004. Again, the defendant failed to produce either Monforte or another representative for the deposition. On July 16, 2004, the Supreme Court so-ordered the parties' stipulation that the defendant would produce its representative for the deposition within 30 days. Despite that so-ordered stipulation, the defendant failed to produce either Monforte or another representative for a deposition.

On August 18, 2004, the decedent moved to strike the defendant's answer based upon the defendant's failure to produce its representative for a deposition. In opposition, the defendant argued that it made diligent efforts to produce Monforte for the deposition by sending him letters advising him to appear for the various deposition dates and requesting that he contact the defendant's counsel. The final letter sent to Monforte on May 24, 2004, noted that, if he failed to make arrangements to be deposed by June 4, 2004, the defendant would subpoena him for a deposition. Significantly, all of the letters sent to Monforte were mailed in care of the defendant at the defendant's address.

In an affirmation by the defendant's counsel in opposition to the motion, he affirmed that he had been informed by his client, without stating when, that the defendant no longer employed Monforte. The defendant's counsel asserted that, on August 24,

2004, the defendant served Monforte with a subpoena, demanding that Monforte appear for a deposition on August 31, 2004.*

On September 20, 2004, the Supreme Court (LeVine, J.) granted the decedent's motion to strike the defendant's answer. Upon reargument, the defendant maintained that the Supreme Court overlooked evidence that it did not act willfully or contumaciously in failing to appear for a deposition since Monforte was no longer in its employ and, thus, it had no one to produce with personal knowledge regarding the painting of the steps at the subject property. On November 9, 2004, the same court and justice denied the defendant's motion for leave to reargue.

Thereafter, on March 14, 2005, the Supreme Court (Hart, J.) conducted an inquest on the issue of damages, and upon its conclusion, directed that a judgment be entered in the decedent's favor in the sums of $150,000 for future pain and suffering, $300,000 for past pain and suffering, and $22,631 for medical expenses.

On the next day, March 15, 2005, the decedent died. Following the substitution of the plaintiff Joyce Stinton, as executrix of the decedent's estate, on March 17, 2006, a judgment was entered in the plaintiff's favor in the principal sum of $472,631.

Meanwhile, the defendant moved to set aside the damages awarded for future pain and suffering, arguing, inter alia, that policy considerations underlying CPLR article 50-B applied here. In part, the defendant contended that, since the decedent died the day after the future pain and suffering award was made, that award "is now 'overcompensation' as [the decedent] is clearly no longer suffering from her alleged injury." On June 5, 2006, the Supreme Court denied the defendant's motion, holding that, while CPLR 5045 (a) provides that future pain and suffering damages not payable in a lump sum terminate upon the death of a judgment creditor, damages awarded in a lump sum for future pain and suffering are not "contingent upon the actual longevity of the judgment creditor." The defendant appeals.

■ We find no merit to the defendant's claim that the Supreme Court improvidently exercised its discretion in striking its answer. An action should be determined on the merits whenever possible. However, a court, in its discretion, may

* Monforte never appeared on that date as he was in Florida working for another company at that time.

invoke the drastic remedy of striking an answer if it determines that the defendant's failure to comply with discovery demands is willful and contumacious (*Careccia v Metropolitan Suburban Bus Auth.*, 18 AD3d 793, 793 [2005]; *see Nunez v City of New York*, 37 AD3d 434 [2007]; *Mendez v City of New York*, 7 AD3d 766, 767 [2004]).

As to the defendant's conduct in failing to produce either Monforte, while in its employ, or another representative for a deposition, the willful and contumacious character of such conduct may be inferred from the defendant's noncompliance, without a reasonable excuse, with two court orders and a so-ordered stipulation directing such a deposition (*see Nunez v City of New York*, 37 AD3d 434 [2007], *supra*; *Lavi v Lavi*, 256 AD2d 602, 603 [1998]). Although the defendant may not have been able to produce Monforte after he left its employ, the defendant failed to explain why it produced neither another representative for the deposition nor timely disclosed to the decedent that it no longer employed Monforte. Either of these actions would have afforded the decedent the opportunity to subpoena Monforte for a nonparty deposition, had she so desired (*see* CPLR 3120). For instance, by producing its representative for a deposition, the decedent would have had the ability to explore the whereabouts of Monforte and, in all likelihood, would have obtained information regarding how to contact him since the record indicates that the defendant had such information. This is especially important here where the decedent was elderly at the time of the accident and delays in discovery could only serve to prejudice her and unjustly benefit the defendant. Moreover, the defendant failed to explain why it did not produce Monforte for a deposition during the time he was under its employ.

We turn now to the defendant's contention that the Supreme Court erred in denying its motion to set aside the award in the sum of $150,000 for future pain and suffering damages. CPLR 4404 (b) provides:

> "After a trial not triable of right by a jury, upon the motion of any party or on its own initiative, the court may set aside its decision or any judgment entered thereon. It may make new findings of fact or conclusions of law, with or without taking additional testimony, render a new decision and direct entry of judgment, or it may order a new trial of a cause of action or separable issue."

Whether or not to set aside a judgment is left to a court's discretion (*see Carney v Carney*, 236 AD2d 574, 575-576 [1997]).

■ The defendant argues that the decedent's death the day after the Supreme Court rendered its verdict warrants reconsideration of the future pain and suffering award in order to prevent a "substantial injustice" to the defendant or a "windfall" to the plaintiff. In so arguing, the defendant relies upon policy considerations underlying CPLR article 50-B. The defendant asks this Court "to balance whether this plaintiff should be compensated $150,000 for less than one day of pain and suffering against the rationale stated by the Legislature in enacting CPLR article 50-B—that periodic payments for future pain and suffering should terminate upon the death of the plaintiff to achieve a reduction in skyrocketing insurance premiums *for all insureds* in the State." We do not agree that this is a circumstance in which, either pursuant to the court's inherent power or by statutory authority, the future pain and suffering award should be set aside or reduced.

First, in entertaining the defendant's argument, we must interpret the relevant statutes that apply to the future pain and suffering damages award at issue on appeal. In so doing, our primary consideration "is to 'ascertain and give effect to the intention of the Legislature.' Of course, the words of the statute are the best evidence of the Legislature's intent. As a general rule, unambiguous language of a statute is alone determinative" (*Riley v County of Broome*, 95 NY2d 455, 463 [2000] [citation omitted], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 92 [a], at 177; *see Matter of Excellus Health Plan v Serio*, 2 NY3d 166, 171 [2004]). Even where the words of a statute are clear, "the legislative history of an enactment may also be relevant and 'is not to be ignored' " (*Riley v County of Broome*, 95 NY2d at 463, quoting McKinney's Cons Laws of NY, Book 1, Statutes § 124, at 252; *see Matter of Tompkins County Support Collection Unit v Chamberlin*, 99 NY2d 328, 335 [2003]).

As the defendant acknowledges, CPLR 5041 (b) provides, in part, that "[t]he court shall enter judgment . . . for future damages not in excess of two hundred fifty thousand dollars." Otherwise, future damages in excess of $250,000, including those for pain and suffering, are subject to a structured periodic payment (*see* CPLR 5041 [e] [providing for payment of such damages in periodic installments]). Thus, future pain and suffering damages of $250,000 or less are payable to a plaintiff as a lump sum (*see* CPLR 5041 [b]; *Bryant v New York City Health & Hosps. Corp.*, 93 NY2d 592, 601 [1999]; *Schultz v Harrison*

*Radiator Div. Gen. Motors Corp.*, 90 NY2d 311, 316-317 [1997]; *Rohring v City of Niagara Falls*, 84 NY2d 60, 65-66 [1994]). Further, CPLR 5045 (a) provides, in pertinent part, that "the liability for payment of any installments for . . . non-economic loss not yet due at the death of the judgment creditor terminates upon the death of the judgment creditor."

These statutory provisions are incorporated in CPLR article 50-B, which constituted part of the tort reform measures passed in 1985 (CPLR art 50-A [concerning medical and dental malpractice actions]) and 1986 (CPLR art 50-B [pertaining to personal injury, injury to property, and wrongful death actions]) (*see Schultz v Harrison Radiator Div. Gen. Motors Corp.*, 90 NY2d at 317; *Rohring v City of Niagara Falls*, 84 NY2d at 65; *see also* Wolkoff and Hanushek, *The Economics of Structured Judgments under CPLR Article 50-B*, 43 Buff L Rev 563, 563 [1995]). Prior to 1985, "future damages were awarded in a lump sum representing the present value of the future damages, payable immediately" (*Desiderio v Ochs*, 100 NY2d 159, 166 [2003]). As the Court of Appeals noted in *Rohring v City of Niagara Falls* (84 NY2d 60 [1994], *supra*):

"Though the statutory scheme of article 50-B is technical and complicated, its basic operation is easily stated. Past damages are paid in a lump sum. Future damages, which are awarded by the jury without reduction to present value, are bifurcated for purposes of article 50-B. The first $250,000 is paid as a lump sum. The remainder, after the subtraction of attorney's fees and other adjustments, is to be paid in periodic installments" (*id.* at 66 [citations omitted]).

CPLR article 50-B "closely parallels the provisions of article 50-A" and "the structured award provision of article 50-B was explicitly based on the analogous 50-A provision, CPLR 5031 (e)" (*Schultz v Harrison Radiator Div. Gen. Motors Corp.*, 90 NY2d at 317). Accordingly, the legislative histories of both articles have relevance to this analysis (*id.*).

Those legislative histories reveal that one of the objectives of the tort reform legislation was to moderate the cost of ever-rising insurance premiums (*see* Governor's Program Bill Mem, Bill Jacket, L 1985, ch 294, at 4-12; Governor's Approval Mem, Bill Jacket, L 1986, ch 682, at 1-2, 1986 NY Legis Ann, at 288-289; *Desiderio v Ochs*, 100 NY2d at 172). The theory was that, by structuring a portion of "large awards of future damages,"

the injured party would be guaranteed that compensation as need arises, while the defendant/insurer "paying a judgment in periodic installments [would] reduce[ ] the overall cost of the judgment by permitting the insurer to retain and invest the balance of the award before . . . installments come due" (Governor's Program Bill Mem, Bill Jacket, L 1985, ch 294, at 7-8; *see Desiderio v Ochs*, 100 NY2d at 172; *see also* Governor's Approval Mem, Bill Jacket, L 1986, ch 682, at 2; 1986 NY Legis Ann, at 288-289). In addition, under the then-proposed bills, "the obligation to [pay] non-economic losses (e.g., pain and suffering) would terminate if the plaintiff died before the entire schedule of payments was paid" (Governor's Program Bill Mem, Bill Jacket, L 1985, ch 294, at 8).

Significant to this appeal, structured payments, along with the concomitant provision relieving a judgment debtor of the burden of continuing to make scheduled payments upon the death of a judgment creditor, were only triggered upon the future pain and suffering damage award reaching a set amount (*id.*; *see* Governor's Approval Mem, Bill Jacket, L 1986, ch 682, 1986 NY Legis Ann, at 288-289; *Schultz v Harrison Radiator Div. Gen. Motors Corp.*, 90 NY2d at 317). Although the legislative histories reveal that the monetary amount triggering the provision relieving a judgment debtor of the burden of continuing to make scheduled payments upon the death of a judgment creditor was at one point suggested to be $100,000, the bill in 1985 (CPLR art 50-A) and the one in 1986 (CPLR art 50-B) both provided for a $250,000 lump-sum payment (*see* Mem of Assembly Rules Comm, Bill Jacket, L 1985, ch 294, at 18; *see also* CPLR 5031, 5041).

Thus, while as the defendant contends, the legislative history reflects that measures were taken in the adoption of CPLR article 50-B to reform tort law in an attempt to reduce insurance costs, nothing in that legislative history warrants the application of principles governing structured settlements to an amount at or below the sum of $250,000—the amount set by the Legislature as triggering the structured payment provisions of article 50-B. Instead, the legislative histories underlying CPLR articles 50-A and 50-B confirm that the Legislature intended to leave a certain amount—$250,000—as a lump-sum payment unaffected, therefore, by the structured periodic payment provisions of those articles, including that of CPLR 5045 terminating such an award where the plaintiff dies prior to the end of the structured term (*see* CPLR 5041, 5045; *Bryant v New*

*York City Health & Hosps. Corp.*, 93 NY2d at 601; *Schultz v Harrison Radiator Div. Gen. Motors Corp.*, 90 NY2d at 317; *see also Riley v County of Broome*, 95 NY2d at 467). Moreover, to adopt the defendant's reasoning would, in essence, require this Court to rewrite the provisions of CPLR article 50-B relating to future damages awards by eliminating the provision which currently exempts the first $250,000 in future damages from being subject to periodic installments. That is a task for the Legislature and not this Court (*see Riley v County of Broome*, 95 NY2d at 468). Rather, "we must apply the terms of the statute as written" (*Schultz v Harrison Radiator Div. Gen. Motors Corp.*, 90 NY2d at 320).

In so applying the relevant sections of CPLR article 50-B here, we find no statutory provision that warrants setting aside or reducing the $150,000 damages award for future pain and suffering (*see Schultz v Harrison Radiator Div. Gen. Motors Corp.*, 90 NY2d at 317; *Rohring v City of Niagara Falls*, 84 NY2d 60, 65 [1994]). Moreover, under the circumstances of this personal injury action involving an elderly woman, where the defendant caused significant delays, this Court's interest in justice lies in affirming the judgment. Therefore, the sum of $150,000 in future pain and suffering damages awarded to the plaintiff in the subject judgment is owed by the defendant as of the date liability was established (*see Rohring v City of Niagara Falls*, 84 NY2d at 70; *see also Scannapieco v City of New York*, 298 AD2d 81, 88-89 [2002]; *Brown v City of New York*, 297 AD2d 771, 773 [2002]). Further, we note, the death of the decedent prior to the entry of the judgment does not affect that liability (*see* CPLR 5016 [d]; *135 W. 36th LLC v World City Am. Inc.*, 34 AD3d 317, 317 [2006]).

The defendant's remaining contentions either are without merit or are not properly before us.

Accordingly, the judgment and the order are affirmed.

SPOLZINO, J.P., FISHER and COVELLO, JJ., concur.

Ordered that the judgment and the order are affirmed, with one bill of costs.