OPINION OF THE COURT
Jack M. Battaglia, J.
On August 2, 2007, plaintiff Haya Zizersky was driving her 1998 Ford when it collided with a 2008 BMW driven by defendant Symantha J. Mitchell. The BMW was owned by either defendant BMW of North America, LLC or BMW Financial Services NA, LLC, and had been delivered to Ms. Mitchell by defendant Life Quality Motor Sales, Inc., a BMW dealer, for her use while her vehicle was being serviced by the dealer. The verified complaint alleges that each of the defendants is liable for damages resulting from Ms. Mitchell’s operation of the BMW.
With this motion, defendants BMW of North America, LLC, BMW Financial Services NA, LLC, and Life Quality Motor Sales, Inc. move for an order, pursuant to CPLR 3212 and 49 USC § 30106, dismissing the verified complaint as against them. The federal statute, known as the Graves Amendment, was enacted on August 10, 2005, and “bars vicarious liability against professional lessors and renters of vehicles” as would otherwise be mandated by Vehicle and Traffic Law § 388. (See Graham v Dunkley, 50 AD3d 55, 57 [2d Dept 2008].)
Vehicle and Traffic Law § 388 provides in relevant part that
“[e]very owner of a vehicle . . . shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner.” (Vehicle and Traffic Law § 388 [1].)
The term “owner” includes “any lessee or bailee of a motor vehicle . . . having the exclusive use thereof, under lease or otherwise, for a period greater than thirty days.” (See Vehicle and Traffic Law §§ 128, 388 [3].)
Our state statute “expresses the policy that one injured by the negligent operation of a motor vehicle should have recourse to a financially responsible defendant.” (Continental Auto Lease Corp. v Campbell, 19 NY2d 350, 352 [1967]; Graham v Dunkley, 50 AD3d at 57.) “The owner of the automobile is the obvious candidate, for he can most easily carry insurance to cover the risk.” (Continental Auto Lease Corp. v Campbell, 19 NY2d at 352.)
*873 The Graves Amendment provides in pertinent part:
“§ 30106. Rented or leased motor vehicle safety and responsibility
“(a) In general. — An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if—
“(1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
“(2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).”
The statute defines the terms “affiliate” and “owner” (see 49 USC § 30106 [d] [1], [2]).
When it applies, the Graves Amendment “preempt[s] the vicarious liability imposed on commercial lessors by Vehicle and Traffic Law § 388,” and is “a constitutional exercise of congressional power pursuant to the Commerce Clause of the United States Constitution.” (Graham v Dunkley, 50 AD3d at 58.)
The court notes in the first instance that, on this motion, the parties assume that, absent the Graves Amendment, each of the moving defendants would be liable for any negligence of defendant Mitchell in the operation of the BMW. The court would only add that Vehicle and Traffic Law § 388 has been applied to “loaner” vehicles. (See Dunne v Lloyd, 40 AD3d 685, 686 [2d Dept 2007]; Fill v Matson Motors, 183 AD2d 324, 328-329 [4th Dept 1992]; Matter of Liberty Mut. Ins. Co. v Clench, 180 AD2d 684, 685 [2d Dept 1992].)
In support of their motion, the BMW entities and the dealer rely upon an affidavit of Cathy Savino Brennan, the dealer principal assistant of Life Quality Motor Sales; an affidavit of Flora Tsentner, the internal operations manager of Life Quality; copies of a BMW rental agreement and Life Quality Motor Sales loaner car addendum; and portions of the transcript of the examination before trial of defendant Mitchell.
Defendants’ motion could be denied because they fail to sufficiently establish prima facie the relationship of each defendant *874 to the subject vehicle, or that any of them are “engaged in the trade or business of renting or leasing motor vehicles” (see 49 USC § 30106 [a] [1]), so as to claim the protection of the Graves Amendment. The verified answer asserts that defendant BMW of North America, LLC is the “owner” of the vehicle (see verified answer 1Í1Í 6, 7); whereas the affidavit of Ms. Brennan asserts that defendant BMW Financial Services NA, LLC is the “registered owner” (see affidavit of Cathy Savino Brennan 11 3); and counsel’s affirmation asserts, without explanation, that both BMW entities own the vehicle (see affirmation If 6).
The moving defendants point to Ms. Brennan’s affidavit as evidence that “[a]ll Moving Defendants are engaged in the trade and business of loaning and leasing motor vehicles” (id. ¶ 14), but, even assuming Ms. Brennan’s testimonial competence to provide evidence as to the BMW entities, her affidavit makes no statement at all about the trade or business of either of the BMW entities. As to Life Quality Motor Sales, she asserts that it is “engaged in the business of selling and repairing motor vehicles, as well as renting motor vehicles to owners of vehicles that are being repaired.” (Affidavit of Cathy Savino Brennan ¶ 2 [emphasis added].) Ms. Brennan’s assertion is to be contrasted with that of Ms. Tsentner, who asserts that Life Quality is “engaged in the business [of] selling and repairing motor vehicles, as well as loaning motor vehicles, to the owners of vehicles that are being repaired.” (Affidavit of Flora Tsentner ¶ 2 [emphasis added].)
The difference in the affidavits is particularly important because the fundamental dispute between the parties here is the applicability of the Graves Amendment to “loaner” vehicles used, without charge, by persons whose own vehicles, previously purchased or leased, are being serviced. It is essentially plaintiffs’ contention that, no matter which defendant or defendants might be considered the “owner” of the subject vehicle or an “affiliate” of the “owner,” and whether any or all defendants might be engaged in the trade or business of renting or leasing motor vehicles, the Graves Amendment cannot apply where, as here, the subject vehicle is “loaned” without separate charge to the user. Under such circumstances, as plaintiffs would have it, the vehicle has not been “rented” or “leased” as those terms are used in the Amendment. Defendants, of course, disagree.
The affidavits of Ms. Brennan and Ms. Tsentner are sufficient to establish prima facie the admissibility of the BMW rental *875 agreement and loaner car addendum purportedly signed by Ms. Mitchell, and the authenticity and admissibility of the documents are not challenged by plaintiffs. The court notes, however, that the rental agreement refers to “terms and conditions on both sides,” whereas only a copy of one side is provided. This, in itself, would be reason to disregard the document, but none of the parties asserts that there is anything on the missing “side” that is material to any issue on this motion.
The BMW rental agreement is blank under the heading “rental charges,” and that section of the document is crossed out. The loaner car addendum states the user’s understanding that, if the vehicle is not returned within 24 hours after notification that the repairs to the user’s own vehicle have been completed, the user will be charged $40 per day. There is no evidence that, when the collision with plaintiffs vehicle occurred, the BMW was subject to any charge because Ms. Mitchell had not returned it as required by the addendum, and the moving defendants do not contend that any charge was incurred.
Rather, the moving defendants rely on the following paragraph in the BMW rental agreement as sufficient to qualify Ms. Mitchell’s possession and use of the vehicle as a “rental” within the meaning of the Graves Amendment: “If Your vehicle is being serviced by Us under BMW warranty Our right, or the right of Our affiliate, to repair your vehicle during this rental is considered by Us as the rental fee. No additional consideration is necessary except for fuel You use and do not replace.”
The reference to fuel corresponds to a provision in the loaner car addendum that makes the user “responsible for the fuel used in the vehicle,” and allows Life Quality to charge the user’s credit card “the amount necessary to replenish the fuel.”
The moving defendants point to no evidence that Ms. Mitchell’s vehicle was being serviced “under BMW warranty” when she received the “loaner” vehicle. No document is provided relating to Ms. Mitchell’s purchase or lease of the BMW vehicle that was being serviced, and, therefore, no evidence as to the terms of any warranty. Ms. Mitchell testified at her deposition that her vehicle required repair because of “contaminated gas” (examination before trial of Symantha J. Mitchell at 14-15), which is not a condition or circumstance that would be expected to give rise to any obligation under a customary motor vehicle warranty.
Even assuming, however, that Ms. Mitchell’s own vehicle was being serviced “under BMW warranty,” rendering the quoted *876 provision from the BMW rental agreement applicable, the court concludes for reasons that will appear that any so-called “right ... to repair [the] vehicle,” characterized as a “rental fee,” cannot constitute the subject vehicle as “rented” or “leased” for purposes of the Graves Amendment. However it might be characterized for other purposes, the loan of the subject vehicle to Ms. Mitchell was a simple bailment (see Fili v Matson Motors, 183 AD2d at 328-329).
In construing statutes, “legislative intent is the great and controlling principle, and the proper judicial function is to discern and apply the will of the Legislature.” (Matter of Brown v Wing, 93 NY2d 517, 522 [1999] [citations and internal quotation marks omitted]; see also Doctors Council v New York City Employees’ Retirement Sys., 71 NY2d 669, 674-675 [1988].) “[T]he most direct way to effectuate the will of the Legislature is to give meaning and force to the words of its statutes.” (Desiderio v Ochs, 100 NY2d 159, 169 [2003].) These principles were applied earlier this year by the Court of Appeals in interpreting the Graves Amendment, stating “[a]s a general proposition, we need not look any further than the unambiguous language of the statute to discern its meaning.” (See Jones v Bill, 10 NY3d 550, 554 [2008].)
Where there is need for further consideration, however, “a primary command to the judiciary in the interpretation of statutes is to ascertain and effectuate the purpose of the Legislature.” (See Rankin v Shanker, 23 NY2d 111, 114 [1968]; see also Fumarelli v Marsam Dev., 92 NY2d 298, 303 [1998].) “In finding such purpose, one should look to the entire statute, its legislative history and the statutes of which it is made a part.” (Rankin v Shanker, 23 NY2d at 114.) And “where there are two possible interpretations the court will accept that which avoids constitutional doubts.” (Courtesy Sandwich Shop v Port of N.Y. Auth., 12 NY2d 379, 389 [1963]; see also Matter of Burns v Miller Constr., 55 NY2d 501, 505 [1982].)
Plaintiffs rely on Hall v ELRAC, Inc. (52 AD3d 262 [1st Dept 2008]) and Murphy v Pontillo (12 Misc 3d 1146 [Sup Ct, Nassau County 2006]) as authority for the conclusion that “loaner” arrangements of the type involved here are not covered by the Graves Amendment. Although these opinions provide some support for plaintiffs’ contention, neither decision so holds.
In Hall, the First Department agreed with the Second Department that the Graves Amendment does not violate the Commerce Clause (see Hall v ELRAC, Inc., 52 AD3d at 262), and *877 also rejected an argument that “the Graves Amendment violates equal protection by favoring car rental companies over other vehicle owners, such as taxi owners, repair shop owners who provide loaner vehicles to customers, and car dealerships that allow test drives, who also allow others to operate their vehicles” (see id.). The opinion cannot be read as a holding, or even dictum, that the Amendment does not apply to the described activities, but must be read as holding that, if the statute does distinguish between “renting of vehicles” and “these other activities,” it is constitutional (see id. at 262-263). It is not clear, moreover, that the First Department used “repair shop owners” to include lessors and renters.
In Murphy, Supreme Court denied the defendant car dealer’s motion for dismissal based upon the Graves Amendment because there was insufficient evidence, among other things, “regarding the making and terms of the purported lease” so as to allow the court to find “it is the type of lease or rental agreement subject to the Graves Amendment.” (See Murphy v Pontillo, 12 Misc 3d at 1148.) The court noted a lack of proof that the user “ever paid for the use of the vehicle, and thus there is a question of whether he just borrowed it, which would arguably make the Graves Amendment inapplicable.” (Id. [emphasis added].) Again, there was no holding or dictum that the Amendment does not apply to “loaner” vehicles.
The Second Department’s ruling in Dunne v Lloyd (40 AD3d 685 [2007]), not cited by either plaintiffs or the moving defendants, involved a vehicle “loaned” to the driver by a dealer “pursuant to a Subaru service loaner program owner/rental agreement” (id. at 686). The appellate court affirmed summary judgment against the dealer “on the ground that, as the owner of the vehicle operated by [the driver], it was vicariously liable for [the driver’s] negligence,” citing Vehicle and Traffic Law § 388. (See id.) The court also cites the Graves Amendment, with a “cf.” direction, noting it is “applicable to actions commenced on or after August 10, 2005,” and Jones v Bill (34 AD3d 741 [2d Dept 2006]), which determined when an action would be deemed “commenced” for purposes of the Amendment. (See id.) It is arguable that the citation to the Graves Amendment suggests that a different result would have obtained had the Amendment been applicable to the action under review, but the citation might only signal the Amendment’s effect on Vehicle and Traffic Law § 388 when the Amendment is applicable.
This court has found no other decision, in New York or elsewhere, that addresses the issue.
*878 “The central distinguishing characteristics of a lease is the surrender of absolute possession and control of property for an agreed-upon rent.” (First Franklin Sq. Assoc., LLC v Franklin Sq. Prop. Account, 15 AD3d 529, 532 [2d Dept 2005], quoting Matter of Plaza v City of New York, 305 AD2d 604, 606 [2d Dept 2003]; see also Matter of Dodgertown Homeowners Assn. v City of New York, 235 AD2d 538, 539 [2d Dept 1997].) “When referring to tangible personal property, the word ‘lease’ means a contract granting the right to possess property for a specified period of time in exchange for periodic payment of a stipulated rent.” (In re ICS Cybernetics, Inc., 123 BR 467, 475-476 [ND NY 1989], affd 123 BR 480 [ND NY 1990].)
“In the context of lease agreements, ‘rent’ is defined as the amount paid for use and occupation of land or other property.” (Matter of Daben Corp., 469 F Supp 135, 141 [DPR 1979]; see also Stecher v 85th Estates Co., 43 AD3d 732, 743 [1st Dept 2007, McGuire, J., dissenting]; 2657 E. 68th St. Corp. v Bergen Beach Yacht Club, 161 Misc 2d 1031, 1033 [Civ Ct, Kings County 1994].) When used as verbs, the words “lease” and “rent” are synonymous. (See Richards v Princeton Ins. Co., 178 F Supp 2d 386, 395 [SD NY 2001].)
Giving the words their plain meaning, therefore, to “lease” or “rent” property requires payment for its use. If the words carry any shade of difference in common parlance when applied to personal property, a “lease” might be understood as allowing use for a longer term than a “rental.” But, again, giving the words their plain meaning, bailment of a “loaner” vehicle without charge is neither a “lease” nor a “rental.”
As the moving defendants would have it, their “right” to service Ms. Mitchell’s own vehicle, presumably purchased or leased from one of them, is sufficient “consideration” to constitute the “loaner” arrangement a “rental” for purposes of the Graves Amendment. (Reply affirmation ¶ 6.) It may be that the bailment of a “loaner” vehicle without charge, but with other legal consideration, and considering the totality of the contract and relationship between the parties, would be sufficient to constitute a “lease” or “rental” for some purposes. (See Matter of West-Herr Ford, Inc. v Tax Appeals Trib. of State of N.Y., 16 AD3d 727 [3d Dept 2005]; Associated Group Servs. v Grow, 258 AD2d 716 [3d Dept 1999].) On the evidence of the arrangement presented here, however, there is no “lease” or “rental” for purposes of the Graves Amendment.
As its title indicates, the Graves Amendment was not part of the original House or Senate versions of the Safe, Accountable, *879 Flexible, Efficient Transportation Equity Act; but was offered by Representative Sam Graves of Missouri and adopted during House consideration of its original bill. (See 151 Cong Rec H1199-H1203 [Mar. 9, 2005].) After passage by the Senate of its original bill, the Conference Committee adopted the House version, including the Graves Amendment, and the House and Senate agreed. (See HR Conf Rep 109-203, 109th Cong, 1st Sess, at 1102, reprinted in 2005 US Code Cong & Admin News, at 452, 738 [July 28, 2005] [to accompany HR 3].) There is nothing in the floor debate on the Amendment or in the conference report that bears on the issue before the court. It is worth noting, however, that Representative Jerrold Nadler of New York argued against adoption of the Amendment.
In upholding the constitutionality of the Graves Amendment under the Commerce Clause, the Second Department noted that “vicarious liability laws caused lessors to either cease leasing cars in states having them, opting for more expensive balloon note structures, or spread the cost of higher insurance premiums to lease customers nationwide.” (See Graham v Dunkley, 50 AD3d at 61.) “[T]he rental and lease of vehicles, and the conditions under which such transactions occur, are economic activities which impact the national market,” and those activities “taken in the aggregate, substantially affect interstate commerce.” (See id. at 61, 60.) “Congress had a rational basis to conclude that rentals and leases of vehicles, even in purely intrastate instances, have a substantial effect on interstate commerce.” (Id. at 61-62.)
Similarly, in upholding the constitutionality of the Graves Amendment in the face of an equal protection challenge, the First Department held that the “renting of vehicles has a clear substantial effect on interstate commerce . . . , and the same rational basis for regulating the renting of vehicles under the Commerce Clause even in purely intrastate instances . . . supports the classification for purposes of equal protection.” (See Hall v ELRAC, Inc., 52 AD3d at 262-263.) “[The] elimination of vicarious liability will result in a reduction of insurance costs that will in turn result in a reduction of consumer prices and allow more lessors to remain in business.” (Id.) Particularly important for present purposes, the First Department stated that the “clear substantial effect on commerce” from the “renting of vehicles” is “unlike . . . other activities,” including “repair shop owners who provide loaner vehicles to customers.” (Id. at 262.)
*880 A construction of the statute, therefore, that would include “loaner” vehicles under the circumstances presented here as “leased” or “rented” vehicles would appear both unrelated to the statutory purposes, and to raise a question about the constitutionality of the Amendment at least to that extent. Nothing has been proffered on this motion to suggest that a “loaner” vehicle, even if connected to the purchase or lease of another vehicle, has any effect whatsoever on the market for leased or rented vehicles, or, in particular, contributes in any way to the problems Congress attempted to address with the Graves Amendment.
Finally, the court is mindful that, unlike the interpretation of other federal statutes, the determined scope of the Graves Amendment will undermine the policy of the State’s Vehicle and Traffic Law. Like our Court of Appeals, this court looks for “clearer indication from Congress” before “infer[ring] greater . . . application of a law that otherwise denies injured plaintiffs a viable cause of action.” (See Jones v Bill, 10 NY3d at 555.)
Defendants’ motion is denied.