NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13378

MARIA BLANCA ELENA GARCIA & another[1]  vs.  SHANITQUA STEELE &
others.[2]


Suffolk.     March 8, 2023.  -  June 27, 2023.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, Kafker, Wendlandt,
& Georges, JJ.


Motor Vehicle, Dealer, Entrustment.  Negligence, Motor vehicle,
    Vicarious liability, Entrustment.  Contract, Consideration,
    Lease of equipment.  Federal Preemption.  Statute, Federal
    preemption, Construction.  Practice, Civil, Summary
    judgment.


Civil action commenced in the Superior Court Department on
July 27, 2018.

The case was heard by David A. Deakin, J., on motions for
summary judgment.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Peter Antonelli (Thomas H. Curran also present) for the
plaintiffs.

_____

[1] José Fafián Seijo.

[2] Kolawole Oke; MBB Auto, LLC, doing business as Mercedes
Benz of Brooklyn; and MBF Auto, LLC, doing business as Mercedes
Benz of Caldwell.

Michael S. Melville for MBB Auto, LLC, & another.
David M. Lentini, II, for Kolawole Oke.


WENDLANDT, J.  This case presents the question whether an automobile dealership that includes an automotive service center and provides a "courtesy" vehicle to its customer while conducting repair work on the customer's car is entitled to the protection set forth in 49 U.S.C. § 30106 (Graves Amendment). The Graves Amendment generally protects rental car companies from being held vicariously liable for torts committed by customers driving their rental vehicles.  Where a rental car company demonstrates that it falls within the scope of the Federal statute, including, inter alia, by showing that the vehicle at issue was "rent[ed] or lease[d]," the Graves Amendment preempts State laws such as G. L. c. 231, § 85A (§ 85A), which sets forth a rebuttable presumption that the owner of a vehicle is vicariously liable for injuries caused by the driver of the vehicle.

In the present case, a New Jersey-based automobile dealership that includes an automotive service center provided a courtesy vehicle to a customer while it serviced the customer's vehicle.  Contrary to the terms of the courtesy vehicle agreements, the customer drove the vehicle beyond the permitted radius of travel and into the Commonwealth.  While in Boston, he left the vehicle illegally parked with the key in the ignition

and the engine running as he conducted an errand; his then-wife, who did not have a driver's license and was not an authorized driver under the courtesy vehicle agreements, remained in the vehicle. When a parking officer required that the vehicle be moved, the wife moved into the driver's seat and pushed a button. The vehicle rolled forward through a red light and struck one of the plaintiffs, causing serious injuries.

The plaintiffs brought a negligence claim against, inter alia, the automobile dealership. In opposition to the automobile dealership's motion for summary judgment, the plaintiffs relied on § 85A, contending that, as the owner of the courtesy vehicle, the dealership was presumptively vicariously liable for the injuries caused by the customer's wife.

We conclude that, under the circumstances, the Graves Amendment protects the automobile dealership from being held vicariously liable for the tortious conduct of the driver of its courtesy vehicle. In particular, the record on summary judgment indisputably demonstrates that the dealership provided the courtesy vehicle in consideration for the customer's over-all service repair business, and thus it "rent[ed]" or "lease[d]" the vehicle even though it did not charge the customer for his use of the vehicle as a line item separate from the service work. Further concluding that the record is devoid of any basis whatsoever for liability against a second dealership defendant

and that there is a dispute of material fact as to the negligent entrustment claim against the customer, we affirm the grant of summary judgment in favor of the dealership defendants, vacate the grant of summary judgment insofar as it pertains to the customer, and remand the matter to the Superior Court for further proceedings.

1. Background. a. Facts. "The following facts are either undisputed 'or viewed in the light most favorable to . . . the party against [whom] summary judgment entered.'" HSBC Bank USA, N.A. v. Morris, 490 Mass. 322, 323 (2022), quoting Berry v. Commerce Ins. Co., 488 Mass. 633, 634 (2021).

In August 2016, the defendant Kolawole Oke brought his car to the defendant MBF Auto, LLC, doing business as Mercedes Benz of Caldwell (MBF Auto), in New Jersey to be serviced . Because the service work was expected to require MBF Auto to hold Oke's car for more than three hours, MBF Auto provided a courtesy vehicle to Oke for his use while his car was being serviced. The courtesy vehicle was owned by and registered to MBF Auto, one of approximately 125 vehicles in the "loaner car fleet" maintained by the dealership.

Prior to supplying the courtesy vehicle, MBF Auto required Oke to provide his driver's license, proof of insurance, and a credit card. Oke also signed a document entitled "loaner car authorization form," pursuant to which, inter alia, he

represented that he had a valid driver's license, he agreed that he would return the courtesy vehicle within twenty-four hours of notification that repairs had been completed on his car, and he acknowledged both that he would be charged a daily fee if he failed to return the courtesy vehicle timely and that he would be responsible for all third-party claims arising from his use of the courtesy vehicle.

In addition, Oke signed a document entitled "courtesy car agreement" on which Oke's driver's license number, his insurance carrier and policy number, and the last four digits of his credit card number were recorded. The agreement specified the make, model, year, license plate number, and "car number" of the courtesy vehicle and set forth a "rate" of "$0.00" per mile for the vehicle, with no "net amount due." The agreement provided additional terms of the courtesy vehicle arrangement, including that the vehicle was "[l]imited to operation within 100 mile radius of Mercedes-Benz of Caldwell[, New Jersey]." Just above Oke's name and signature, in a font that was noticeably larger than the other provisions in the agreement, the agreement provided: "UNDERSIGNED CLIENT IS THE ONLY PERSON AUTHORIZED TO OPERATE VEHICLE." This term was boldfaced and in all capital letters. Oke again acknowledged that he would be charged a daily rate should he fail to return the courtesy vehicle within twenty-four hours of receiving notice that repairs had been

completed on his own car; and he again agreed "[t]o hold Lessor harmless and to assume full responsibility for any loss, damage[,] or any claim that may occur, to any person, or persons, or any other property, of any kind, through the use by any person including the Lessee of the above vehicle while it is entrusted to Lessee's use and/or care." At his deposition, Oke testified that he understood that he was the only person authorized to operate the courtesy vehicle.[3] Oke's then-wife, the defendant Shanitqua Steele, was not at MBF Auto and was not involved in the courtesy vehicle transaction.

Despite the terms of these agreements, Oke drove the courtesy vehicle to Boston, more than one hundred miles from MBF Auto. While there, Oke drove the vehicle, with Steele as a passenger, to visit his lawyer. He parked the courtesy vehicle illegally in a drop-off only zone near a crosswalk; while he attended to his errand, Steele, who Oke knew did not have a driver's license, remained in the vehicle. Oke left the key in the ignition, the engine running, and the turn signal activated.

---

[3] In one joint statement of undisputed facts, the plaintiffs admit that Steele did not have permission from Oke or MBF Auto to drive the courtesy vehicle; however, in a different joint statement of undisputed facts, the plaintiffs deny this same fact, on the ground that MBF Auto did not read the courtesy vehicle agreements aloud to Oke and that Oke left Steele in the vehicle with the engine running. We address these arguments infra.

Shortly thereafter, a parking enforcement officer asked Steele to move the vehicle. Steele, who understood that she did not have permission to drive the vehicle, nonetheless moved into the driver's seat. She pressed a button ostensibly to deactivate the turn signal; instead, the car rolled forward through a red traffic light and struck the plaintiff Maria Blanca Elena Garcia, who was walking in the crosswalk. Garcia suffered severe injuries.

b. Procedural history. Garcia and her husband, the plaintiff José Fafián Seijo, sued MBF Auto, MBB Auto, LLC, doing business as Mercedes Benz of Brooklyn (MBB Auto)[4] (together with MBF Auto, dealership defendants), Oke, and Steele, alleging negligence as to Steele and the dealership defendants, negligent entrustment as to Oke, and loss of consortium as to all defendants. A Superior Court judge granted summary judgment in favor of Oke and the dealership defendants.[5] The plaintiffs timely appealed, and this court transferred the case sua sponte.

2. Discussion. a. Standard of review. "Our review of a decision on a motion for summary judgment is de novo." HSBC

---

[4] Although the plaintiffs initially contended that MBB Auto co-owned the courtesy vehicle, they now admit that MBB Auto was neither the owner of the courtesy vehicle nor otherwise involved in the courtesy vehicle transaction between MBF Auto and Oke. The record being devoid of any basis for MBB Auto's liability, we affirm the grant of summary judgment in its favor.

[5] Steele did not seek summary judgment.

Bank USA, N.A., 490 Mass. at 326, quoting Berry, 488 Mass. at 636. Viewing "the evidence in the light most favorable to the party against whom summary judgment entered," HSBC Bank USA, N.A., supra at 326-327, "[s]ummary judgment is appropriate where there is no material issue of fact in dispute and the moving party is entitled to judgment as a matter of law." Id. at 326.

We also "review questions of statutory interpretation de novo." Conservation Comm'n of Norton v. Pesa, 488 Mass. 325, 331 (2021). In construing a statute, we "start . . . with the language of the statute." Williams v. Taylor, 529 U.S. 420, 431 (2000). "It is a 'fundamental canon of statutory construction' that, 'unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.'" Sandifer v. United States Steel Corp., 571 U.S. 220, 227 (2014), quoting Perrin v. United States, 444 U.S. 37, 42 (1979). We do not construe terms in isolation; instead, we consider the specific language of a provision in the context of the statute as a whole. See Yates v. United States, 574 U.S. 528, 537 (2015) (ordinary meaning may be different in "the specific context in which that language is used, and the broader context of the statute as a whole" [citation omitted]). Where the statutory command is straightforward, "there is no reason to resort to legislative history." United States v. Gonzales, 520 U.S. 1, 6 (1997). See Burlington N. R.R. v. Oklahoma Tax Comm'n, 481 U.S.

454, 461 (1987) ("Legislative history can be a legitimate guide to a statutory purpose obscured by ambiguity, but [i]n the absence of a clearly expressed legislative intention to the contrary, the language of the statute itself must ordinarily be regarded as conclusive" [quotations and citations omitted]).

b. Vicarious liability and the Graves Amendment. The plaintiffs contend that MBF Auto is vicariously liable for the tortious conduct of Steele. They rely on § 85A, which establishes a presumption that evidence that the vehicle was registered in the name of the defendant as owner at the time of an accident involving the vehicle "shall be prima facie evidence that [the vehicle] was then being operated by and under the control of a person for whose conduct the defendant was legally responsible, and absence of such responsibility shall be an affirmative defence." G. L. c. 231, § 85A. The plaintiffs maintain that § 85A precludes summary judgment because MBF Auto, as the registered owner of the courtesy vehicle, was presumptively in control of Steele at the time of the accident giving rise to the plaintiffs' negligence claim under the theory of vicarious liability.

MBF Auto contends, and the motion judge agreed, that the Graves Amendment preempts § 85A and that, under the circumstances of the present case, the Graves Amendment

precludes holding MBF Auto vicariously liable for Steele's conduct.  The Graves Amendment provides, in relevant part:

> "An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if -- (1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and (2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner)."  (Emphases added.)

49 U.S.C. § 30106(a).  Where applicable, the Graves Amendment expressly preempts State laws, such as § 85A.  See Hillman v. Maretta, 569 U.S. 483, 490 (2013) ("Under the Supremacy Clause, Congress has the power to pre-empt [S]tate law expressly").  In particular, its protection extends to owners of vehicles that rent or lease the vehicle, are in the business or trade of renting or leasing vehicles, and are not negligent or criminal in connection with the rental or lease.  The plaintiffs maintain that the Graves Amendment does not apply to MBF Auto's courtesy vehicle program, arguing principally that MBF Auto did not rent or lease the vehicle because it provided the vehicle merely as a courtesy to Oke, receiving no consideration for doing so.  They also maintain that MBF Auto was negligent in its administration of its courtesy vehicle program.

i.  Rent or lease requirement.  To trigger the protection afforded to rental car companies pursuant to the Graves Amendment, the owner of the car in question, inter alia, must have "rent[ed]" or "lease[d]" the car.  49 U.S.C. § 30106(a).  In other words, the owner must have received consideration in exchange for the car.  See Black's Law Dictionary 909 (8th ed. 2004) (defining "lease" as "[t]o grant the possession and use of [land, buildings, rooms, movable property, etc.] to another in return for rent or other consideration" [emphasis added]); id. at 1322 (defining "rent" as "[c]onsideration paid, usu[ally] periodically, for the use or occupancy of property [esp[ecially] real property]" [emphasis added]).[6]  Accord Thayer v. Randy Marion Chevrolet Buick Cadillac, LLC, 30 F.4th 1290, 1293 (11th Cir. 2022) (analyzing Graves Amendment and determining that "to

---

[6] "Dictionaries are useful aids in determining a word's ordinary meaning."  Penobscot Nation v. Frey, 3 F.4th 484, 491 (1st Cir. 2021), cert. denied sub nom. United States v. Frey, 142 S. Ct. 1668 (2022), and cert. denied, 142 S. Ct. 1669 (2022), citing Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 553-554 (2014) (interpreting "exceptional" based on dictionary definitions), and Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter, 575 U.S. 650, 662 (2015) (defining "pending" using dictionary definitions).  See Yates, 574 U.S. at 537 ("Ordinarily, a word's usage accords with its dictionary definition").

The eighth edition of Black's Law Dictionary, "which was current when the Graves Amendment was enacted and for several years thereafter, does not define 'rent' as a verb."  Thayer v. Randy Marion Chevrolet Buick Cadillac, LLC, 30 F.4th 1290, 1293 n.3 (11th Cir. 2022).

rent or lease a vehicle requires an exchange of consideration for the use of the vehicle").[7]

In the present case, MBF Auto contends that, even though it provided Oke with a vehicle as a "courtesy," and thus did not charge Oke to use the vehicle, it received consideration for the vehicle in the form of acquiring the opportunity to perform the repair work on Oke's car.  Specifically, MBF Auto maintains that the courtesy vehicle was part of a larger transaction to perform repair work on Oke's car even though the courtesy vehicle itself was not delineated as a separate line item in the service deal. The plaintiffs, by contrast, argue that, because the courtesy vehicle was provided to Oke free of any additional charge, MBF Auto did not receive consideration and the vehicle thus was not "rent[ed]" or "lease[d]" as required by the Graves Amendment.

Consideration is the inducement to a contract; it can take the form of an act, a forbearance, or a return promise bargained for and received by a promisor from a promisee.  See Black's Law

---

[7] The parties do not contend, and we see nothing to suggest, that the context of the statute as whole indicates an alternative construction of the term "rent" or "lease."  See Pub. L. No. 109-59, 109th Cong., 1st Sess., Title X, Subtitle B, § 10208(a), 119 Stat. 1935 (2005).  The Graves Amendment was a "Miscellaneous Provision[]" to the "Safe, Accountable, Flexible, Efficient Transportation Equity Act:  A Legacy for Users," 119 Stat. 1144, a statute that does not use the terms "rent" or "lease" other than according to their ordinary meanings.  See, e.g., 119 Stat. 1765.  And, because the words of the statute are unambiguous, we need not consult its legislative history. Gonzales, 520 U.S. at 6.

Dictionary, supra at 324 (defining "consideration" as "[s]omething [such as an act, a forbearance, or a return promise] bargained for and received by a promisor from a promisee; that which motivates a person to do something, esp[ecially] to engage in a legal act"); Webster's Third New International Dictionary 484 (1993) (defining "consideration" as "something given as recompense:  as . . . something that is legally regarded as the equivalent or return given or suffered by one for the act or promise of another:  an act or forbearance or the promise of it done or given by one party").

Consideration need not take the form of a monetary payment. See Thayer, 30 F.4th at 1294 ("consideration is broader than simply the payment of money").  See also Stanley v. Schwalby, 162 U.S. 255, 276 (1896) ("A valuable consideration may be other than the actual payment of money, and may consist of acts to be done . . .").  It extends to "any act of [one party] from which the [other party] . . . derives a benefit or advantage" (citation omitted).  Black's Law Dictionary, supra at 324. "[C]onsideration in its widest sense is the reason, motive, or inducement, by which a man is moved to bind himself by an agreement" (citation omitted).  Id.  Accord Huang v. Ma, 491 Mass. 235, 240 (2023) ("a reciprocal exchange of benefit and detriment constitut[es] consideration").

Here, MBF Auto provided the courtesy vehicle as part of a servicing transaction to repair Oke's car; in exchange for the opportunity to service Oke's car and to be paid for that repair work, MBF Auto offered the repair work itself and the courtesy vehicle as further inducement to obtain Oke's business.  See Thayer, 30 F.4th at 1294 & n.4 ("[the owner] provides vehicles in exchange for the opportunity to service the customer's car" and "the provision of a vehicle may serve as an inducement for the customer").

The plaintiffs maintain that the Graves Amendment does not apply where, as here, the courtesy vehicle was not billed separately from MBF Auto's repair work on Oke's car.  However, "the law does not require every term of the contract to have a separately stated consideration."  Edwards v. First Am. Corp., 798 F.3d 1172, 1182 (9th Cir. 2015).  Rather, "[a] single performance or return promise may . . . furnish consideration for any number of promises."  Id., quoting Restatement (Second) of Contracts § 80 comment a (1981).  See 3 R.A. Lord, Williston on Contracts § 7:51 (4th ed. 2008) (stating basic premise that one consideration may support several promises).  Indeed, the same argument made by the plaintiffs here was squarely rejected by the United States Court of Appeals for the Eleventh Circuit, which noted that often rental companies provide a vehicle as

part of a larger package deal and yet they are entitled to the protection of the Graves Amendment.  Thayer, 30 F.4th at 1294.[8]

The plaintiffs' contention that MBF Auto is not entitled to the protection of the Graves Amendment because the courtesy vehicle agreements refer to the vehicle as a "loaner" car fares no better.[9]  To the contrary, the labels used by the contracting parties are not controlling.  See Thayer, 30 F.4th at 1294 ("Whatever label [the owner] happened to assign to the vehicle here does not control the legal determination of whether the Graves Amendment applies.  The substance of the transaction, not the label used, controls").  Cf. Lone Star Silicon Innovations LLC v. Nanya Tech. Corp., 925 F.3d 1225, 1229 (Fed. Cir. 2019), citing Waterman v. Mackenzie, 138 U.S. 252, 256 (1891) (legal effect of agreement "depends on the substance of what was

---

[8] To the extent the plaintiffs argue that MBF did not "rent" the courtesy vehicle because Oke was charged a one-time fee for the service work and thus was not charged periodically as rent usually is, see Black's Law Dictionary, supra at 1322, we disagree.  It is indisputable that the Graves Amendment protects traditional rental car companies, yet "most rental cars are rented for a one-time payment, meaning that fact cannot preclude application of the Graves Amendment."  Thayer, 30 F.4th at 1294.

[9] The term "loan" means "[t]o lend, esp[ecially] money," Black's Law Dictionary, supra at 955, and "lend" means "[t]o allow the temporary use of (something), sometimes in exchange for compensation, on condition that the thing or its equivalent be returned," id. at 921.  The plaintiffs assert that because the courtesy vehicle was a "loaner," it could not also have been rented or leased.  As is clear from their definitions, however, the terms are not mutually exclusive.

granted rather than formalities or magic words").  As discussed supra, looking at the substance of the transaction between MBF Auto and Oke, the courtesy vehicle meets the ordinary meaning of "rent[]" or "lease[]" because it was provided to Oke in exchange for consideration -- namely, the opportunity to service Oke's car.[10]

ii.  Business of renting or leasing vehicles requirement. To qualify for the protection of the Graves Amendment, MBF Auto must be in "the trade or business of renting or leasing motor

---

[10] The plaintiffs, citing Zizersky v. Life Quality Motor Sales, Inc., 21 Misc. 3d 871 (N.Y. Sup. Ct. 2008), contend perfunctorily that extending the Graves Amendment to owners of courtesy vehicles like the one at issue in the present case raises concerns under the commerce clause of the United States Constitution.  See art. 1, § 8, cl. 3, of the United States Constitution.  See also Zizersky, supra at 880 (including "loaner" vehicles would "raise a question about the constitutionality of the [Graves] Amendment" because "[n]othing has been proffered on this motion to suggest that a 'loaner' vehicle, even if connected to the purchase or lease of another vehicle, has any effect whatsoever on the market for leased or rented vehicles").  The argument runs contrary to the near unanimous holdings of Federal courts that have considered similar challenges.  See Rodriguez v. Testa, 296 Conn. 1, 22 (2010) (collecting cases and concluding that "all but one district court have found [the Graves Amendment] to be a proper exercise of the commerce power").  Indeed, it is beyond question that Congress may protect and regulate "the instrumentalities of interstate commerce," United States v. Lopez, 514 U.S. 549, 558 (1995), and "those activities having a substantial relation to interstate commerce," id. at 558-559.  The regulation of rentals of courtesy vehicles falls within this power.  In fact, here, the MBF Auto courtesy car agreement limited Oke to driving the vehicle within one hundred miles of Caldwell, New Jersey, a radius that includes multiple other States.  And, in contravention of this limitation, Oke drove the courtesy vehicle into Massachusetts.

vehicles."  49 U.S.C. § 30106(a)(1).  The record on summary judgment indisputably shows that it was.  Specifically, MBF Auto maintained approximately 125 vehicles in its "loaner car fleet." Since 2014, MBF Auto has "regularly provide[d] loaner vehicles to customers as a courtesy when a customer's car is being serviced for more than three hours."  At any given time, approximately ninety to ninety-five percent of those vehicles are with customers, and in the month of August 2016, when the accident at issue occurred, MBF Auto provided courtesy vehicles to its customers 886 times.[11]

iii.  Negligence.  In addition to the aforementioned requirements, an owner who rents or leases a vehicle is protected from being held vicariously liable only if there was "no negligence or criminal wrongdoing on the part of the owner." 49 U.S.C. § 30106(a)(2).[12]  "To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty,

---

[11] The plaintiffs did not contest before the motion judge that MBF Auto was in the business of renting or leasing vehicles; the argument is thus waived.  See Boss v. Leverett, 484 Mass. 553, 563 (2020) ("issues not raised below cannot be argued for the first time on appeal").  Even on appeal, the plaintiffs mention the issue only briefly and make no argument separate from their challenge that the courtesy vehicle was not "rented" or "leased."

[12] The plaintiffs do not argue MBF Auto engaged in any criminal wrongdoing.

that damage resulted, and that there was a causal relation between the breach of the duty and the damage."  Jupin v. Kask, 447 Mass. 141, 146 (2006).  Although "[w]e generally consider the latter three questions . . . to be the special province of the jury," id., summary judgment may enter where a plaintiff fails to raise a genuine dispute of material fact.  See, e.g., Global NAPs, Inc. v. Awiszus, 457 Mass. 489, 500 (2010) ("The issue whether an attorney's negligence was a proximate cause of a client's loss may be resolved at the summary judgment stage").  See also Patterson v. Christ Church in the City of Boston, 85 Mass. App. Ct. 157, 159 (2014) ("Negligence cases are not frequently resolved by summary judgment, but a judge may decide the issue as [a] matter of law when no rational view of the evidence permits a finding of negligence" [quotation and citation omitted]).

The plaintiffs contend that MBF Auto owed a duty of care to third parties, like the plaintiffs, to reasonably administer and supervise its courtesy vehicle program, and that its failure to do so caused them harm.  The plaintiffs maintain that MBF committed a breach of its duty in several ways, the first of which was by failing to take additional steps to verify that Oke's driver's license was valid beyond accepting his representation that it was.  Regardless of whether MBF Auto should or could verify the validity of Oke's driver's license,

no rational view of the record supports a finding that the failure to verify Oke's driver's license caused Steele to drive the courtesy vehicle, resulting in the plaintiffs' injuries.[13]

Next, the plaintiffs maintain that MBF Auto committed a breach of its duty of care in its administration and supervision of the courtesy car program by failing to train its employees to instruct Oke orally on the restrictions placed on his use of the vehicle -- namely, that he could only use the vehicle within a one hundred-mile radius of the dealership and that he was the only authorized driver.  These restrictions, however, were set forth in writing in the courtesy vehicle agreements, which Oke signed.  Most pertinent to the accident -- which occurred while Steele was driving the courtesy vehicle -- one of the agreements set forth in large, boldfaced, capital letters, right above the signature line:  "UNDERSIGNED CLIENT IS THE ONLY PERSON AUTHORIZED TO OPERATE VEHICLE."  Moreover, Oke knew at the time he signed the courtesy vehicle agreements that he was the only person authorized to operate the courtesy vehicle.  Thus, no jury could reasonably conclude that MBF Auto's alleged failure to train its employees to orally explain the provisions of the written contract to Oke caused the accident.  The plaintiffs have not raised a genuine dispute of material fact that MBF Auto

---

[13] Oke represented that he had a valid driver's license, and nothing in the record contradicts that, in fact, he did.

negligently caused the accident and thus was not protected by the Graves Amendment;[14] accordingly, MBF Auto is entitled to summary judgment.[15]

c. _Negligent entrustment_.  We turn next to the plaintiffs' claim of negligent entrustment against Oke.  "In order to prevail on a claim of negligent entrustment of an automobile, it is necessary for the plaintiff to show, among other things, that the defendant owned or controlled the motor vehicle concerned, and that the defendant gave the driver permission to operate the vehicle" (quotation and citation omitted).[16]  Alioto v. Marnell, 402 Mass. 36, 40 (1988).[17]  We have described the requisite "permission" as "knowingly allowing an incompetent operator to drive the defendant's vehicle" (citation omitted).  Barnstable

---

[14] For at least these same reasons, the plaintiffs' claim that MBF Auto is directly liable (as opposed to vicariously liable) for its negligence in the administration of its courtesy vehicle program also fails.

[15] In light of the foregoing, plaintiffs' loss of consortium claim as it pertains to the dealership defendants also fails. See Sena v. Commonwealth, 417 Mass. 250, 264 (1994) ("a claim for loss of consortium requires proof of a tortious act that caused the claimant's spouse personal injury").

[16] It is undisputed that Oke controlled the courtesy vehicle.

[17] A claim of negligent entrustment also requires "proof of the driver's incompetence, and proof of the defendant owner's knowledge of that incompetence." Leone v. Doran, 363 Mass. 1, 11, vacated in part on other grounds, 363 Mass. 886 (1973). Here, it is not disputed that Oke knew that Steele lacked a driver's license.

County Mut. Fire Ins. Co. v. Lally, 374 Mass. 602, 605 (1978). The record shows that Oke left the courtesy vehicle running with the key in the ignition while it was illegally parked; he attended to his errand while Steele remained in the vehicle. This conduct, a rational finder of fact could reasonably conclude, constituted implicit permission or knowing consent for Steele to move the illegally parked vehicle if needed.[18]  See, e.g., Watson v. Salvoni, 27 Mass. App. Ct. 735, 737 (1989) (in connection with claim for negligent entrustment, examining whether parents gave "implied" permission for son to drive moped through prior conduct).  See generally A.L. Cohen, Cause of Action for Negligent Entrustment of Motor Vehicle, 23 Cause of Action 2d 265 § 10 (2003 & May 2023 update) ("If the owner knew, or had reasonable cause to know, that his or her actions or omissions would place the operation of a motor vehicle in the care of a person unfit to handle that responsibility, the test for permissive use is satisfied").[19]

---

[18] Oke's reliance on cases concerning stolen vehicles is inapt where, as here, the vehicle was not stolen; moreover, "the reasoning of cases involving keys negligently left in ignitions is no longer persuasive." Poskus v. Lombardo's of Randolph, Inc., 423 Mass. 637, 640 (1996).  See R.L. Currie Corp. v. East Coast Sand & Gravel, Inc., 93 Mass. App. Ct. 782, 785 & n.5 (2018) (collecting cases).

[19] Cf. Drescher v. Travelers Ins. Co., 359 Mass. 458, 460-461 (1971) (operation of vehicle was "impliedly sanctioned" by owner); Dufour v. Arruda, 299 Mass. 46, 47-48 (1937) (operation of vehicle was with "implied consent" of owner).  Other

3. <u>Conclusion</u>.  The grant of summary judgment in favor of MBF Auto and MBB Auto, see note 4, <u>supra</u>, is affirmed.  The grant of summary judgment in favor of Oke is reversed, and the case is remanded for further proceedings.

<u>So ordered</u>.

---

jurisdictions have concluded that the permission element of a claim for negligent entrustment includes implied permission or knowledge.  See, e.g., <u>Morin</u> v. <u>Moore</u>, 309 F.3d 316, 327 (5th Cir. 2002) ("for purposes of a negligent entrustment claim, permission may be express or implied"); <u>Armenta</u> v. <u>A.S. Horner, Inc.</u>, 2015-NMCA-092, ¶ 22, quoting <u>Allstate Ins. Co.</u> v. <u>Jensen</u>, 1990-NMSC-009, ¶ 8 n.3 ("Implied permission to use a motor vehicle can be inferred from a course of conduct or relationship between the parties, or other facts and circumstances signifying the assent of the owner"); <u>Kingrey</u> v. <u>Hill</u>, 245 Va. 76, 78 (1993) ("In considering negligent entrustment of automobiles, we have required express permission, evidence of a pattern of conduct supporting implied permission, or <u>evidence of knowledge that an automobile would be used notwithstanding explicit instructions to the contrary</u>" [emphasis added]).